No. 13,847.

Gleason *v.* McKeehan.
(66 P. [2d] 808)

Decided March 22, 1937. Rehearing denied April 12, 1937.

Mr. HENRY H. CLARK, Mr. FRED W. STOVER, for plaintiff in error.

Mr. AB H. ROMANS, Mr. HATFIELD CHILSON, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error, a physician and surgeon, against whom defendant in error obtained a judgment for $5,000 upon a complaint alleging malpractice, assigns error. Reference will be made to the parties as they appeared in the trial court; namely, as plaintiff and defendant.

During pregnancy, and on January 16, 1934, plaintiff's

wife, while suffering from severe hemorrhages, entered the county hospital of Larimer county where defendant was generally in charge as county physician. At about 7:30 p. m. defendant, after examination by himself and also by Dr. Brown, upon consultation, and recommendation to plaintiff and his wife, performed a Caesarean operation upon the wife whereby a four and a half or five months' old fetus was removed, together with her appendix and tubes which were diseased. Following the operation, peritonitis developed and the patient died January 23rd.

Plaintiff alleged that a Caesarean operation was not the proper method of treatment for the relief of the condition, alleged to have been a pending miscarriage, and that defendant knew or should have known that it was not the proper procedure; notwithstanding he advised and performed the operation and in so doing was negligent and careless.

Defendant answered alleging that he found a different condition, explained upon the trial as placenta praevia, and that in the performance of the operation and advising same, he exercised his best care, skill and judgment and that same was in conformity with recognized and approved practice in such cases in the locality where the operation was performed. He further denied that the performance of the operation or any advice or treatment given by him was the "proximate cause of death"; and denied negligence in connection therewith. A determination of the case must rest largely upon the application of the law to the evidence which consisted principally of the testimony of a number of physicians and surgeons called for expert opinions, with the usual variance in such cases. This evidence was submitted to a jury with the resulting verdict.

 What disposition is to be made of the case depends upon whether or not the defendant acted contrary to the rule in Colorado recently announced by the opinion of this court in *Brown v. Hughes*, 94 Colo. 295,

30 P. (2d) 259. In that case we said: "The defendants [defending physicians] herein must first have left and entirely abandoned all knowledge acquired in the fields of exploration and adopted some rash or experimental methods before they approached the danger zone of liability." We first must look for the answer to the uncontradicted testimony of the defendant and associate, as to the condition present immediately prior to the operation, and the procedure followed; since the opinions given by experts who were not present and who had not examined the patient, can only be of secondary value when given upon general propositions.

Five physicians and surgeons testified on behalf of plaintiff, none of whom, except Dr. Gasser, had at any time examined the patient. The testimony of these witnesses will not be detailed other than that upon what we conclude to be the controlling features of the case. Dr. Gasser testified that he examined the patient November 24, November 27, December 7, December 26, January 12 and at 10 o'clock a. m. on January 16; that as a result of his examination on January 12, he advised hospitalization and evacuation of the uterus; that January 16, at 10 o'clock a. m., the patient was having a copious hemorrhage and passed a large amount of blood clots; that in the examination, he could insert two fingers through the cervix into the uterus; that the patient left his office and then arranged for entrance in the county hospital on the evening of the same date. He further testified that he never had performed a Caesarean operation, but had assisted in six or seven, none of which involved a placenta praevia; that the doctor in attendance is better qualified to diagnose than a doctor not in attendance; and he stated that he disagreed with the diagnosis made by defendant, believing it to be a well defined case of miscarriage and that a Caesarean operation should not have been performed; that this opinion was on the assumption that there was no placenta praevia present; that he had not asked any of the 20 or 30 physicians practicing

in the vicinity of Fort Collins as to what would be the proper practice in such cases as here presented; that he does not criticise defendant for removing the tubes and appendix under the condition found by defendant and did not know whether the patient would have died without their removal or not.

Dr. D. F. Hartshorn had never examined the patient. It appears from his testimony that he had formed the opinion that the Caesarean operation was not the proper or approved practice, but had reached his conclusion without knowing the contents of the hospital record; that there is a difference of opinion among medical authorities as to whether the Caesarean procedure is proper at less than a full term of pregnancy; that the exact condition of the uterus could be determined by the physician performing a Caesarean operation and could be cleaned up 100 per cent at the time without depending upon nature; that the physician in charge is the best judge of the patient's condition, and that in his practice, he uses his own judgment and if he deems necessary, operates.

Dr. Humphrey testified that he had not examined the patient; had performed one Caesarean operation and did that on his own judgment together with two consultants; that in all cases his own judgment plus the general practice, controls.

Dr. F. H. Hartshorn never examined the patient; never had a case of placenta praevia and his experience did not include anything relative to rigid cervixes.

Dr. Beebe had not examined the patient; had no opinion as to the practice or procedure in placenta praevia cases in the locality, and always operated in the light of the condition as appeared to his best judgment.

On behalf of defendant, ten physicians and surgeons testified who had not seen the patient. The defendant and Dr. Brown, who assisted in the operation, both testified. The defendant testified that he had been practicing in Fort Collins for 20 years and had been county physician for Larimer county for six years; that he had

attended over 1900 obstetrical cases and had performed 29 Caesarean operations; that he had had two other placenta praevia cases in which he successfully had performed Caesarean operations; that he receives no fee for any operations performed at the county hospital, but receives a monthly salary for services which include all such cases; that upon his examination of the patient January 16, he recommended to the patient, her mother, and her husband the plaintiff, that a Caesarean operation be performed on account of the emergency; that he called Dr. Brown to examine the patient and for consultation afterwards, and they agreed that it was a case of placenta praevia; that he proceeded with the operation in the presence of Dr. Brown, his assistant Dr. Honstein, the anesthetist, and three nurses; that he removed the placenta and fetus, and upon finding the tubes diseased and full of pus and the appendix ulcerated, removed both in an operation which consumed 58 minutes which he testified was a reasonable length of time for such operations; that he gave the patient all the time and attention he could during the seven days following the operation and prior to her death, and personally waited on her during that time; stated that he could have done no more in any other case and that his main purpose was to save her life; that he complied with the general and proper practice followed in similar localities in like cases and further that he found a rigid cervix upon examination.

Dr. Brown, testifying for defendant, stated that he examined the patient upon the request of defendant just prior to the operation; that he found the uterus enlarged, the cervix not dilated, could not insert one finger; that the uterus just above the cervix was soft, an indication of placenta praevia; that his diagnosis was a central placenta praevia with approximately five months pregnancy; that upon consultation with defendant, both agreed it was safer and more advisable to open the abdomen and remove the contents through an opening in the uterus and that the operation was performed in compli-

ance with proper approved practice in such cases in this and similar localities.

Dr. Cram had not examined the patient; was of the opinion that defendant did nothing he should not have done under the circumstances; that in all such cases, there is danger of death regardless of the method of treatment used; that the Caesarean operation afforded defendant the opportunity of discovering the diseased condition of the tubes and the appendix and that it was very doubtful if the patient would have lived; that the danger of infection is about equal where the uterus is emptied otherwise than through a Caesarean section.

Dr. Stewart had not examined the patient. He testified that in all placenta praevia cases, there is danger of death regardless of the method used and the precaution taken; that defendant was justified in removing the tubes and appendix at the time of the operation; that he doubted whether the patient would have lived had a Caesarean operation not been performed; that defendant complied with what is generally recognized as the approved practice in Fort Collins and similar vicinities; that the opinion of the attending physician controls as to what is to be done and that in the local practice the opinion of the attending doctor controls even if opposed to the practice laid down in medical text books.

Dr. Honstein administered the anesthetic to the patient; approved the performance of the operation and all that was done by defendant; and stated that it was in accordance with the approved practice and procedure in such cases.

Doctors Taylor, Platz, McFadden, Garrison and Joslyn all testified in defendant's behalf, and their testimony is generally to the same effect as that heretofore related as given by the doctors testifying in defendant's behalf; that the case, as described by defendant, was one of placenta praevia and not miscarriage; and that the physician in charge is better qualified than anyone else to judge as to the conditions which exist.

There is no evidence tending, even remotely, to show that defendant was not skillful and careful in the actual performance of the operation; that he neglected the patient in any way, or that he did not give the patient proper care. Neither is there any evidence to the effect that the diseased tubes and appendix should not have been removed. There is no evidence that the patient's death was caused solely and proximately by the operation performed by defendant. There is none that defendant did not exercise the skill, care and judgment that he was presumed to have and there is no evidence that he disregarded any clearly defined or well established practice and procedure in a case presenting conditions as found by him.

█ █ A motion for nonsuit was presented at the close of plaintiff's case, and we believe, should have been sustained. This is not a case indicating that the defendant was incompetent or that he failed to exercise his best judgment or that he went outside of the recognized field of practice. All professional witnesses testifying made it clear that the controlling element in every case, such as here presented, is the attending doctor's ability and the exercise of his personal judgment; that they were so controlled in their own practice. Before liability attached to defendant in this case, it must have been shown that he was unskillful or negligent, and that through a lack of his skill or care, the patient died. By the evidence, the contrary is either shown or not questioned. It is undisputed that defendant is and was an experienced physician and a skillful surgeon thoroughly familiar with cases of this nature, and apparently far more so, than anyone testifying either in his behalf or for the plaintiff. What was proper in the way of treatment or surgical procedure had to depend upon the condition found at the time of the operation of which complaint is made, and not upon a different condition said to have been present several hours before. When the general consensus of the opinion of all physicians testifying was to the effect that

the physician or surgeon then in charge must be controlled by his best judgment, then it should not lie in the mouth of any witness to condemn the exercise of such judgment when exercised by an admitted skillful or experienced physician, and especially, when each witness testifying as an expert in such matters, reserved unto himself the right to exercise his own judgment in his cases and to proceed accordingly. The defendant did not undertake a wholly new experiment but, according to the evidence, followed a method that had previously been used with success by himself, and a procedure—admittedly rare—but known to have been sometimes used. As to the exact time when such an operation, as was here performed, is to be resorted to, it appears that the text writers are not fully in accord. Had defendant adopted a different course, it would have been contrary to his personal judgment; evidence of lack of professional knowledge in such matters; and he would have been guilty of not employing his best skill and care which ultimately was to be exercised in the case in hand. The first requirement in such matters is that the physician in attendance be competent in such matters and necessarily he must be careful. Nothing more can attend to meet urgent circumstances. He is not, and never can be, a warrantor of cures or even favorable results. Intervening causes may sometimes thwart the highest skill employed in the accustomed or only procedure known.

Upon hypothetical inquiry, five physicians were inclined to condemn the procedure followed by the defendant; however, generally, each reserved to himself the right to rely upon the exercise of his own best judgment in an emergency or when called for by the circumstances of the case. As against this testimony, some ten or eleven physicians, relying upon the condition—as to which there was no dispute—which defendant and Dr. Brown found, approved the procedure followed, and further were of the general opinion that the patient would probably have died in any event even had no such opera-

tion been performed. In all the evidence there is not the slightest intimation of negligence as to the technique of the operation or the following care of the patient. There is no conflict as to the facts, only a difference in views as to the proper method to have been followed. Where there is such a divergence of opinion between physicians schooled in such matters, as we find here, how can it reasonably be expected that twelve laymen as jurors, could determine the technical questions involved with fairness to the parties concerned. This record presents a clear case in which the medical witnesses disagree, and in such circumstances the competent physician in charge is bound only to exercise his best skill and judgment in determining the course to be followed and acting accordingly. In so doing he incurs no liability. It is for him to accept and act upon one practice or the other, and not for a jury blindly to determine the course which should have been followed, by a verdict of liability. The motion for nonsuit should have been granted.

The judgment is reversed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE YOUNG and MR. JUSTICE KNOUS dissent.