No. 14,719.

HANLEY *v.* SPENCER.
(115 P. [2d] 399)

Decided June 9, 1941.   Rehearing denied July 14, 1941.

Mr. CARL W. BERUEFFY, for plaintiff in error.

Messrs. GOSS & HUTCHINSON, Messrs. TWITCHELL, CLARK & ECKLEY, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error Hanley, plaintiff below, brought an action for damages against defendant in error, a duly licensed physician and surgeon specializing in treatment

of eye, ear, nose and throat, charging malpractice in treating an injury to plaintiff's eye. A motion for nonsuit at the conclusion of the evidence introduced on behalf of plaintiff was denied, but after all of the testimony was in the trial court sustained a motion by defendant for a directed verdict in his favor. It is to reverse the judgment based on said directed verdict that Hanley has brought the case here by writ of error. Reference will be made to the parties as they were designated in the trial court, or by name.

It appears from the record that during the summer of 1937 plaintiff, while working on heating equipment being installed in a new high school at Boulder, then in process of construction, suffered an injury to his eye caused by a piece of cement which fell from the ceiling directly above where he was working. Some of the small particles of cement apparently remained within the eye. The accident happened on July 31st—Saturday. Plaintiff testified that he went to defendant's office on August second—defendant's records show the call was made August fifth—where he was treated by having the cement particles removed, and he at that time was given a prescription. He continued working until August 20th, when, without again consulting defendant, he left for California on a pleasure trip. His eye continued to cause him pain and on October 28th he consulted Dr. Beckett of San Francisco, an optometrist, complaining of frontal headaches. While Dr. Beckett did not make an ophthalmoscopic examination, he found the eye and vision to be normal and instructed plaintiff to return in ten days. Plaintiff did not comply with this instruction. He returned to Boulder about November 1st. He testified that his eye still was giving him trouble at this time, but that he did not again report to Dr. Spencer until November 22nd. At this time some controversy arose between plaintiff and defendant because Spencer considered the case closed, as plaintiff had not returned for further treatment and a statement had been ren-

dered and payment made for treatment, on August 5th, it being a workmen's compensation case.

Plaintiff's allegations of negligence were as follows: "(1) In negligently failing to examine the eye of the plaintiff at the time of the first visit hereinabove set forth, said negligence consisting of inattention to the plaintiff at a time when the defendant was under a contract obligation, as hereinbefore set forth, to give the plaintiff such attention as he then needed, and when the defendant knew, or in the exercise of reasonable prudence, should have known, that the plaintiff was in need of the skilled attention of a physician. (2) In negligently delegating the examination of the said eye of the plaintiff to a person unqualified therefor. (3) In negligently failing to remove all of the said foreign particles from the right eye of the plaintiff. (4) In negligently advising the plaintiff that no diseased condition was apparent in the said right eye, and that no treatment therefor was necessary, at a time when defendant knew, or should have known, that said eye was then in need of immediate attention and treatment for the purpose of removing the said foreign material."

It is apparent that the third allegation above set out is the gravamen of this action, and unless the evidence disclosed that Dr. Spencer failed to remove the cement particles, and that their continued presence in the eye resulted in the damage of which complaint is made, the trial court pursued the proper course in directing a verdict for defendant. Doctor Spencer's assistant did perform some of the preliminaries in the August 5th examination, but the actual examination with instruments was made by the doctor, and he wrote the prescription which was later filled.

All of the medical men who treated plaintiff during the six months following his last visit to defendant agreed that his eye trouble was due to a disease known as keratitis, an inflamation of the cornea, but none of them discovered any foreign particles in the eye until

June 5, 1938, ten months after the accident, and the then examining doctor could not identify the foreign bodies—in the hearing before the Industrial Commission he identified them as white corpuscles—and the testimony shows that between August 5, 1937, and June 5, 1938, plaintiff did have other foreign particles in his eye, on at least two occasions.

There is no testimony in this record to indicate that any cement particles which may have gotten into plaintiff's eye at the time of the accident remained there after his visit to defendant on August 5th, and even if they had so remained the expert testimony is to the effect that the keratitis was not caused by trauma, but rather was a systemic infection. The undisputed testimony here is that plaintiff's eye condition showed marked improvement while he was being treated on the theory that the disease was due to a systemic infection and during the time concerning which his principal witness testified that there were foreign particles in the eye. This same witness also stated that if the keratitis did not develop within three months after the occurrence of the trauma, that trauma would have to be ruled out as a cause.

Without any evidence of the presence of cement particles in the eye after plaintiff's visit to defendant, the jury would have been left entirely to conjecture as to the cause of the condition of his eye, and while the one principal witness for plaintiff indicated a possibility of a causal relationship, he stated emphatically, "I never said that Dr. Spencer caused that keratitis." But assuming there was such a causal relationship as plaintiff here contends, we would be compelled to hold that he was guilty of contributory negligence as a matter of law, if we accept his statement that although dissatisfied with his treatment on August 5th, he did not consult another physician for nearly three months thereafter.

It is not necessary to review the law on the subject. A reference to the recent cases of *Brown v. Hughes,*

94 Colo. 295, 30 P. (2d) 259, and *Gleason v. McKeehan,* 100 Colo. 194, 66 P. (2d) 808, will support the conclusion that plaintiff here did not make out such a case as entitled him to have the matter submitted to a jury. "The burden is not met by a showing that it might have resulted from the operations complained of, and jurors should not be left to conjecture as to the efficient and proximate cause." *Brown v. Hughes, supra.*

Judgment affirmed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK and MR. JUSTICE HILLIARD concur.

MR. JUSTICE OTTO BOCK concurs in the result.