# No. 13,314.

## Powell *v.* Landis.
### (36 P. [2d] 462)

Decided September 17, 1934.  Rehearing denied October 15, 1934.

Mr. John F. Mueller, Mr. Walter F. Scherer, Mr. Teller Ammons, for plaintiff in error.

Mr. Leo Sanders Moses, for defendant in error.

*In Department.*

Mr. Justice Butler, sitting for Mr. Chief Justice Adams, delivered the opinion of the court.

Elizabeth Powell, referred to herein as the defendant, seeks the reversal of a judgment obtained against her by Mrs. M. J. Landis, referred to herein as the plaintiff.

The action was commenced before a justice of the peace, hence there are no pleadings. From the summons it appears that the action was to recover $300 obtained by the defendant from the plaintiff by false representation. The justice of the peace rendered judgment for the plaintiff, and, upon appeal, the county court, having tried the case without a jury, found the issues in favor of the plaintiff and rendered judgment in her favor in the sum of $300. This proceeding is to review the judgment of the county court.

On review, the record is viewed in the light most favorable to the party successful in the trial court, and every inference fairly deducible from the evidence is drawn in favor of the judgment. *Roberts v. Dietz*, 88 Colo. 594, 298 Pac. 1062; *Carper v. Frost Oil Co.*, 72 Colo. 345, 211 Pac. 370.

Viewing the record in the light most favorable to the plaintiff, the following circumstances appear: The defendant owned a beauty shop and listed it with an agent for sale. She also was a member of the state board of cosmetology, which has the power to examine applicants and grant or refuse certificates of registration entitling applicants to practice. Her official duties kept her at the board's office in the state house most of the time. She had in her employ two operators, who conducted the

business at the shop, the defendant being there only part of the time. The plaintiff, who had had 12 years' experience as an operator in and owner of beauty shops, answered an advertisement of the agent and together they visited the shop. The plaintiff examined the equipment and also an appointment book (the only book submitted to her). The defendant had instructed her operators to represent to the plaintiff that the place was doing a business of $20 per week over and above all expenses, and directed one of them to insert names in the appointment book "to make it look like we were doing the business." The book was padded accordingly. The terms of sale demanded by the defendant were not satisfactory, so the plaintiff concluded to obtain a renewal of her certificate or license and then seek work. She called at the office of the board in the state house, where she saw the defendant, who told her that she would have to take an examination, and that it would be three or four months before an examination would be held. The defendant then asked what the plaintiff thought of the shop. The plaintiff answered that she thought it was nice, but that she could not afford it. The defendant then proposed easier terms, whereupon the plaintiff said that it would do no good unless the shop was doing the business, as her husband was sick and she hadn't the money. The defendant then stated that she had been earning $20 per week over and above expenses, that the shop was making a profit of $20 per week, and said that if the plaintiff was interested in the place she could have a special examination right away. The plaintiff, concluding to buy, paid $50 in cash. The receipt stated that $300 should be paid on or before November 16, "at which time possession will be given and Mrs. M. J. Landis will receive her license to practice." It also provided that if the plaintiff "should fail to pass the state board the $50 would be returned to her on that day." The examination was held at once; the plaintiff received her certificate, paid the $300, and agreed to pay $450, the balance of the purchase price, in

monthly installments. She entered into possession, retaining in her employ the defendant's two operators, and also devoting her own time to the business. She continued in business for about two weeks, the earnings from the very start being ridiculously small. At the expiration of the two weeks she accused the defendant of having falsely represented the amount of profits that the defendant had been making, and informed the defendant that she, the plaintiff, could not keep the place; whereupon the defendant said: "Mrs. Landis, there is just one thing for you to do. We will stick someone else, and I will give you your money back." A few days later the plaintiff gave up the shop and the defendant took possession of it and resumed the operation of the business. Promptly upon surrendering possession of the place of business, the defendant not having repaid the money, the plaintiff commenced this action. The operator who testified that the defendant instructed the other operator to pad the appointment book gave the following additional testimony: After the sale the defendant told her that she might take this to court and that she wanted a witness to testify for her. She asked whether witness would like to go home, i. e., to Walsenburg. She gave witness $4, saying: "Olga, you have a job at Walsenburg. You can go home on this $4, but you can't work in Denver without a license." On cross-examination, the witness said that the defendant owed her $20 at that time, and she went to the defendant for the purpose of collecting it. "Q. She gave you a dollar on this indebtedness you claim was owing you, is that right? A. Yes, sir. Q. Did you tell Mrs. Powell at that time you wanted to go to Walsenburg? A. No sir. Q. As a matter of fact didn't you ask Mrs. Powell to loan you the sum of $4.00? A. No sir. Q. You insisted at that time Mrs. Powell owed you $20? A. No. Q. What was your conversation? A. She asked me would I like to go home. I said I didn't want to go until I got my license. She gave me four dollars. She said, 'You can work in Walsenburg,

but you can't work up here.' * * * Q. At the time you and Mrs. Powell had the conversation regarding the $4.00, as a matter of fact didn't you tell Mrs. Powell at the time you were in Denver you were not making any money, you had nothing to eat, and you wanted to go home; and didn't Mrs. Powell take pity on you, give you a dollar and tell you she did not owe you $20, or any other amount; is that true? A. No. That is not true."

All testimony tending to show fraud was flatly contradicted by the defendant; but the trial court's finding in favor of the plaintiff is conclusive against the defendant, and in this proceeding we must consider the plaintiff's evidence as true.

1. The defendant's counsel contend that the representation was made after the deal was closed, and therefore could not have induced the plaintiff to purchase. The evidence on this point is contradictory. There is evidence to the effect that the representation was made before the deal was closed, and the trial court's finding in favor of the plaintiff is conclusive on this point.

2. It is said that the plaintiff inspected the place and the books and relied upon such inspection rather than upon the representation. True, she did look at the equipment and at an appointment book, but there is evidence that the defendant had instructed an assistant to falsify the book so as to make it appear that the business being done was more than actually was done, and the plaintiff testified that she relied upon the representation made by the defendant.

3. The contention that the representation was merely an estimate or a guess or the expression of an opinion cannot be sustained; it is wholly devoid of merit. The representation was clearly one of fact.

4. A further point made by defendant's counsel is that there is no evidence that the defendant knew the representation to be false. The point is not well taken. The situation was such that the defendant had full knowledge of the income and the profits received by her.

She testified that she took out of the business the profits she represented were made. If the representation was false—a matter to be discussed presently—she knew it, of course.

■ 5. An objection urged by defendant's counsel is that there was no competent evidence of the falsity of the representation. It is said that the only evidence relied upon to prove the falsity was the testimony of the plaintiff and her two assistants showing that the earnings after the plaintiff took possession were very much less than the defendant represented her earnings to have been, and that such evidence was inadmissible.

Evidence of the amount of business done after a sale is not always admissible to show falsity of a representation concerning the profits made before the sale. Conditions may be so different as to render the comparison misleading and improper. One person may succeed where another, under the same or different conditions, fails. In the present case, however, the defendant was so occupied with her official duties as to make it necessary for her to remain away from the shop all the time except during the noon hour and evenings and Sundays. As the defendant testified, "I told Mrs. Landis I was working for the state and did not have time to care for shop." The work was done principally by the two operators in her employ. After the sale the same operators continued to work in the shop, and the plaintiff, an experienced worker, also attended to the business. The fact that immediately after the sale, while conditions, so far as customers were aware, were practically unchanged, the business coming into the shop was so small is a material circumstance to be taken into consideration in determining the truth or falsity of the defendant's representation. In the circumstances, such evidence was admissible.

■ 6. It is contended that the evidence was insufficient to prove the falsity of the representation.

In order to determine the question, all of the circum-

stances surrounding the transaction should be considered. The law is thus stated in 12 R. C. L. at pages 440 and 441: "Fraud may be proved by circumstantial evidence. Indeed, from its nature it is difficult to prove it by direct evidence, and it is seldom that it can be so proved. Hence it is more often shown by circumstances than in any other way. It is impossible, however, to enumerate the facts from which it may be inferred. Each case must depend on its own facts, and all the facts and circumstances connected with and surrounding the transaction are to be considered together in determining whether it was fraudulent. Facts of trifling importance when considered separately, or slight circumstances trivial and inconclusive in themselves, may afford clear evidence of fraud when considered in connection with each other. It has been said that in most cases fraud can be made out only by a concatenation of circumstances, many of which in themselves amount to very little but in connection with others make a strong case."

Considering all of the facts and circumstances in evidence, we are not prepared to say that the trial court's finding that the representation was false is not sufficiently supported.

Two trial courts saw the witnesses, observed their appearance and demeanor on the witness stand, and believed the testimony in behalf of the plaintiff and disbelieved that in behalf of the defendant. The evidence was conflicting. In the circumstances, we cannot disturb the findings of the county court.

The judgment is affirmed.

MR. JUSTICE BURKE and MR. JUSTICE HILLIARD concur.