## No. 13,693.

### FARRAH *v.* PATTON.
(59 P. [2d] 76)

Decided June 22, 1936.

Mr. KENNETH W. ROBINSON, Mr. WILLIAM H. ROBINSON JR., Mr. J. E. ROBINSON (of counsel), for plaintiff in error.

Mr. HENRY H. CLARK, for defendant in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

Roy B. Farrah sued A. W. Patton, an osteopath, for damages for alleged negligence. At the close of plaintiff's case defendant moved for a nonsuit. The court denied the motion. The defendant proceeded to introduce his evidence. Before defendant had finished, the court, believing that its former ruling was wrong, in view of *Brown v. Hughes,* 94 Colo. 295, 30 P. (2d) 259, which we decided a week before, sustained the motion for a nonsuit and dismissed the case. Plaintiff seeks a reversal of the judgment of dismissal.

Plaintiff's evidence disclosed the following facts:

About April 5, 1931, plaintiff, a strong, able-bodied man, had a stiff neck caused by painting the ceiling of the kitchen in his house. He sought the professional services of defendant. At defendant's suggestion he seated himself in a chair. Defendant got behind plaintiff, put both hands on plaintiff's neck, one on each side, gave the neck a side motion once or twice, and then gave the neck a "terrific" jerk. Instantly the plaintiff suffered a "terrible" pain as though something in his head had given way, and as soon as the pain came the plaintiff started to vomit and became "terribly" sick. His heart started fluttering, and after he got through vomiting defendant laid him on a table. Plaintiff completely lost his sense of balance, everything started to revolve and he still had a "terrible" pain in his head. His brother then came into the room, and Dr. Patton said "I guess I was a little rough." It seemed to plaintiff that the right side of his body had become entirely paralyzed. He could move his left arm and left leg, but had no control over the right side of his body. Defendant tried to give plaintiff a powder, but he could not swallow. He remained in defendant's office about two hours. Defendant and plaintiff's brother took plaintiff out of the office down the hall to the elevator, put him in the elevator and carried him to the brother's car which was in front of the building. When they arrived at the brother's house, plaintiff was taken out of the car and into the house and laid in the front

bedroom. Plaintiff's right side was totally paralyzed and he could not swallow. In the evening they fed plaintiff some liquid through a tube in the nose. Plaintiff's bowels and bladder absolutely stopped any movement, compelling them to catheterize him and to give him an enema. On the second day thereafter plaintiff's wife wanted a medical doctor and requested defendant to call one. But instead of calling a medical doctor, defendant called another osteopath, who came there and "gingerly" manipulated plaintiff's head, and left without giving plaintiff or his attendants any information.

Dr. Kenneth A. Hill testified that upon examination of plaintiff, he found that the right side of his body was paralyzed, including the arm and the leg, and that there was a partial paralysis of the face; that the throat was paralyzed so that plaintiff was unable to swallow, and that the right vocal cord was paralyzed; that in addition to the paralysis, plaintiff was hiccoughing constantly; that his eyes showed a very marked twitching motion and that he was very dizzy so that he was unable to sit up in bed; that the cause was a lesion, a damaged area in the lateral aspect of the right side of the medulla oblongata at its lowermost portion, just above the junction of the brain stem and the spinal cord where the cord passes through the cranial cavity and the brain commences; and that the lesion was due to injury, to external violence.

Plaintiff was removed to Fitzsimons Hospital and was attended by Major James A. Orbison, an army physician. Major Orbison testified that, in his opinion, plaintiff's symptoms were the result of a severe trauma exerted at the point where the spinal cord enters the skull; that by "trauma" he meant some external force, some blow, some sudden movement of the parts in that region, producing injury to the region of the medulla.

At the time of the trial, nearly three years after being treated by defendant, plaintiff had no control over the muscles in his right arm; could not write or use his right arm to any advantage; the left side of his body was im-

mune to heat, cold and pain; the sensation of touch was gone; and his eyes continued to have a rolling motion all the time. One of the physicians who testified at the trial said that, in his opinion, "plaintiff will never recover from the things that he shows at the present time"; that he "would rate him totally and permanently disabled."

1.   Defendant invoked, and the trial court applied, the rule that the question whether or not a physician was negligent must be tested by the recognized standards of his own school, and that such standards must be established by the testimony of experts.

■   The trial court was mistaken in holding that there was no prima facie showing of negligence, because no osteopath testified concerning the standards of osteopathic treatment in similar cases, and therefore it was not shown that defendant departed from such standard. The trial court based its ruling upon *Brown v. Hughes, supra;* but the facts in that case are different, in important particulars, from the facts in the present case, as an examination of the records will disclose, and every court opinion must be read in the light of the facts before the court. *Froid v. Knowles,* 95 Colo. 223, 36 P. (2d) 156.

■   As applied to many cases, the rule invoked by defendant is sound, but it is not of universal application. In certain types of malpractice cases, the law is that negligence can be proved by nonexpert witnessses. Where, as here, recovery is sought, not for negligence in making an incorrect diagnosis or in adopting the wrong standard of treatment, but for the performance of an operation in a negligent manner, any pertinent evidence having a fair tendency to sustain the charge of negligence is sufficient to take the case to the jury. *Daly v. Lininger,* 87 Colo. 401, 288 Pac. 633. Here the plaintiff admits that the diagnosis (stiff neck) was correct and that the proper standard of treatment (manipulation of neck) was adopted, but contends that, having made a correct diagnosis and having adopted a proper standard of treatment, defendant applied that standard in a negligent manner. The Daly

case, supra, was a case of that kind, and we held that it was reversible error to instruct the jury that the question whether or not the defendant was negligent or unskillful could be shown only by expert evidence. At pages 405 and 406 we quoted with approval the following from the opinion in *Laughlin v. Christensen*, 1 Fed. (2d) 215:

" 'It is true that there is a large class of malpractice cases in which the question or matter under investigation is so intricate and abstruse, or so little understood, that ordinary jurors would in all probability, know nothing about the same, but must be guided by opinions of witnesses having special knowledge. In this class of cases the plaintiff fails to make a case for the jury in the absence of testimony of a properly qualified expert witness. * * *

" 'There are, however, at least two other classes of cases dealing with the admission of expert testimony on the issue of negligence. (1) Those in which the question or matter under investigation is so simple that the jurors are as well able as experts to pass upon the same. Admission of expert testimony in this class of cases, is error. * * * (2) Those cases in which the question or matter under investigation is of such character that the opinion of expert witnesses thereon, though not indispensable, may yet be of material assistance to the jury. In this class of cases the admission or rejection of expert testimony rests in the sound discretion of the court. * * *

" 'Furthermore, it is not a universal rule, even when the alleged negligence of medical men is under consideration, that testimony by experts is indispensable.' "

In *Swanson v. Hood*, 99 Wash. 506, 170 Pac. 135, the court said: "But there is an obvious distinction between a claim of negligence in the choice of methods of treatment and a charge of negligence in the actual performance of the work or treatment after such choice is made. * * * As to the second—a charge of negligent performance—where there is any evidence tending to show such negligence the case is for the jury, as in other cases of

negligence, whenever upon the evidence the minds of reasonable men might differ."

See also: *Vergeldt v. Hartzell*, 1 F. (2d) 633; *Burris v. Titzell*, 189 Ia. 1322, 177 N. W. 557; *Gilstrap v. Osteopathic Sanatorium Co.*, 224 Mo. App. 798, 24 S. W. (2d) 249; *Francis v. Brooks*, 24 Ohio App. 136, 156 N. E. 609; *Toy v. Mackintosh*, 222 Mass. 430, 110 N. E. 1034; *Eicholz v. Poe* (Mo. Sup.), 217 S. W. 282.

The present case comes within the class of cases where the opinion of expert witnesses, though helpful, is not indispensable.

2. From a consideration of the evidence, it seems to us, and we hold, that the plaintiff made a prima facie showing of negligence on the part of the defendant, and of a causal connection between that negligence and plaintiff's injuries. According to the testimony, the rough treatment administered by defendant was followed instantaneously by plaintiff's disability.

In *Hinthorn v. Garrison*, 108 Kan. 510, 196 Pac. 439, a chiropractor thrust his thumb between the shoulder-blades, with such force and violence as to dislocate plaintiff's ribs. The court said: "It is argued that plaintiff must prove that the defendant did not exercise ordinary skill as a chiropractor. This is correct, but the quoted part of the evidence taken by itself without any explanation tends to show that a chiropractor who treated a man entirely free from any trouble with his spine who thereafter suffered as the testimony shows the plaintiff did must have been unskillful or careless."

3. We conclude that the trial court's first ruling, denying the motion for a nonsuit, was right and should have been adhered to, and that the later ruling, sustaining such motion and dismissing the case, was erroneous.

The judgment is reversed, and the cause is remanded for a new trial.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, and MR. JUSTICE HOLLAND, concur.