492 P.2d 889 (1971)
GREENLEAF, INC., a Colorado corporation, et al., Plaintiffs-Appellants,
v.
MANCO CHEMICAL COMPANY, Inc., a Colorado corporation, et al., Defendants-Appellees.
No. 70-553.
Colorado Court of Appeals, Div. I.
December 28, 1971.
*890 Gorsuch, Kirgis, Campbell & Walker, John S. Pfeiffer, Denver, for plaintiffs-appellants.
Rothgerber, Appel & Powers, Robert S. Slosky, William P. Johnson, Denver, for defendants-appellees.
Selected for Official Publication.
PIERCE, Judge.
This action arises from the sale of a specialized chemical business. Appellants, plaintiffs in the trial court, will be referred to herein as "buyers" or by name. Defendants below will be referred to as "sellers" or by name.
Prior to December 1965, Manco Chemical Company, Inc., (Manco) was engaged in the business of formulating and distributing fertilizers, insecticides, and other related chemical products, under the "Manco Denver" trademark, in Colorado and adjacent states. In June 1964, buyers met with Mrs. Mankoff and her brother, Robert L. Radetsky, who had jointly taken over the operation of Manco after the death of its founder, Harold Mankoff. At this meeting, buyers were given certain financial statements of the company. After a series of proposals, a written purchase agreement was executed by the parties in December 1964. Greenleaf, Inc., (Greenleaf) was incorporated for the purpose of carrying on the business theretofore conducted by Manco. Following execution of the contract, buyers made payments to sellers for goodwill, merchandise inventory, and equipment, in accordance with the agreement. A required minimum royalty payment, for the use of the "Manco Denver" trademark, was paid at the rate of $500 per month until June 1967.
In June 1967, buyers notified sellers that the minimum royalty payments required by the purchase agreement were being discontinued, and on July 20, 1967, buyers commenced this action in district court, seeking damages for alleged fraud and deceit by sellers in the inducement of buyers' purchase of the business.
In their complaint, buyers alleged that they had entered into the contract of purchase in reliance upon material representations made by sellers that the gross annual sales of Manco prior to the contract had been in excess of $200,000 per year, and that these representations, known by sellers to be false, were material in inducing buyers to enter into the contract. Buyers further alleged that sellers had no legal right to one of the brand names they sold under the contract. The complaint also alleged that sellers consistently failed and refused to supply buyers with customer and supplier lists and information concerning registrations, which were all required by the contract and were necessary for buyers to reasonably continue the business. Buyers asked that judgment be entered against sellers for the amount paid for minimum royalty payments, goodwill, and intangible assets. Buyers also requested judgment for expenses incurred by them in settlement of a trademark infringement suit relating to the trade name "Stop and Grow."
Sellers denied buyers' allegations of fraud, and counterclaimed for sums due in royalty payments and inventory supplies.
The case was tried to a jury. At the conclusion of buyer's case, the court directed a verdict in favor of sellers on all buyers' claims. At the conclusion of sellers' case, the court directed a verdict in favor of sellers on their counterclaims for royalty payments and against Frank and Modesitt as guarantors of these royalty payments. The inventory counterclaim *891 was submitted to the jury which returned a verdict in favor of sellers.

I.
The trial court's dismissal of buyers' claims for relief based upon fraud was founded upon its determination that plaintiff buyers had failed to establish, by any competent evidence, damages alleged to have been caused by the fraud. Buyers assert that this ruling was in error. We disagree.
Liability for fraud cannot be established without first establishing the existence of damages. Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458, 71 P.2d 154; Slide Mines, Inc. v. Denver Equipment Co., 112 Colo. 285, 148 P.2d 1009. In this case, the trial court properly determined that the measure of damages in fraud is the difference between actual value of the property and what its value would have been had the representation been true. Otis & Co. v. Grimes, 97 Colo. 219, 48 P.2d 788. The trial court found, however, that viewing the evidence in the light most favorable to buyers, no evidence had been introduced as to what their loss of bargain was or as to what the market value of the Manco trade name would have been as opposed to the amount they paid for it.
Upon review of the record, we find no evidence from which a jury could have determined the fair market value of the business or of the trade name at the time they were sold. See Farmer v. Norm "Fair-Trade" Stamp, Inc., 164 Colo. 156, 433 P. 2d 490.
The only related evidence presented by buyers was the actual consideration paid for the assets of Manco. Standing alone, this is not evidence of the fair market value of the business at the time it was sold and cannot be the basis of an award of damages in an action for fraud. Neiheisel v. Malone, 150 Colo. 586, 375 P.2d 197. Where, as here, viewing the record in a light most favorable to the buyers, no evidence of damages has been introduced, the trial court properly directed a verdict against buyers on their claim of fraud. See Candell v. Western Federal Savings & Loan Ass'n, 156 Colo. 552, 400 P.2d 909; Morrison v. Goodspeed, supra.
The necessity of proof of damages in a fraud action is the same whether fraud is asserted as a claim for damages or as an affirmative defense to a counterclaim. See, e.g., Wilson v. Byrd, 79 Ariz. 302, 288 P.2d 1079; see also 37 C.J.S. Fraud § 4. For the reasons set forth above, we therefore conclude that the trial court also properly directed a verdict against buyers on sellers' counterclaim since buyers asserted no other defense.

II.
Buyers next contend that the trial court erred in excluding tendered evidence of the sales volume receipts, disbursements, and other financial data of Greenleaf subsequent to the execution of the purchase agreement. The record indicates this evidence was offered by buyers for the purpose of proving by inference fraudulent and misleading representations and omissions upon which buyers relied. Buyers now contend that this evidence would also have been relevant to the establishment of damages. The trial court, however, determined that the tendered evidence was immaterial to the issues before the court and was misleading since it bore no relationship to any alleged misrepresentation by sellers. We find this ruling to be correct.
Evidence of operation of a business after a sale is permitted for use as a comparison only when the continued operation after the sale is similar enough to that prior to the sale to permit a fair comparison. Powell v. Landis, 95 Colo. 375, 36 P. 2d 462. The evidence in this case, however, indicates that the operation of Greenleaf, Inc., was wholly dissimilar to the operation of Manco. Not only was the new company under different management, but all the labels were changed, new products were introduced, a new catalog was prepared, and a major effort was undertaken to change the image of the company. It also appears that the Platte River flood of *892 June 1965 adversely affected the production and sales of Greenleaf and necessitated the relocation of its facilities. The burden was clearly upon buyers to show by some legitimate evidence that there was a connection between the lessened profits of the corporation after the sale and the alleged misrepresentations of sellers. Where, as here, there was no foundation laid from which a legitimate comparison could be made, the trial court did not err in excluding this evidence. Powell v. Landis, supra; LeBlanc v. Deslandes, 117 Vt. 248, 90 A.2d 802.

III.
On cross-error, sellers allege that the trial court improperly assessed interest against Modesitt and Frank. Judgment was entered against Modesitt and Frank in the amount of $15,000. The trial court thereafter amended judgment to include interest at six percent from June 17, 1969, the date of the order joining Modesitt and Frank as additional parties plaintiff. Sellers allege they are entitled to interest from July 19, 1967, the date when buyers totally repudiated the contract and were in default. We disagree.
Although we find no Colorado cases directly on point, it is the general rule that when a guarantor of a debt has not paid an obligation which has matured and become a primary obligation of that guarantor, interest is recoverable from the guarantor only from the time of notice and demand. Walton v. Washington County Hospital Ass'n, 178 Md. 446, 13 A.2d 627, 128 A.L.R. 970. See 38 Am.Jur.2d Guaranty § 76. In the case at hand, the underlying contract contains no express provision for interest or for the liability of guarantors therefor. Since there is no evidence that any demand was made upon Modesitt or Frank on their guaranty until they were joined as additional parties in this action, we find the trial court's assessment of interest was proper.
Buyers' further assignments of error have been fully considered and are found to be without merit.
Judgment affirmed.
SILVERSTEIN, C.J., and ENOCH, J., concur.