**Ronald K. GREENE, Plaintiff-Appellant,**

v.

**Donn D. THOMAS, M.D., Defendant-Appellee.**

**No. 81CA0430.**

Colorado Court of Appeals, Div. II.

Nov. 26, 1982.

Rehearing Denied Jan. 20, 1983.

Certiorari Denied May 2, 1983.

Howard E. Parks, Jr., Denver, for Ronald K. Greene, plaintiff-appellant.

Richard D. Hall, Hall & Evans, Denver, for Donn D. Thomas, M.D., defendant-appellee.

BERMAN, Judge.

Plaintiff, Ronald K. Greene, appeals from a judgment dismissing his medical malpractice claims against defendant, Donn D. Thomas, at the end of plaintiff's case because of a failure to present admissible testimony on standards of care and because of his inability to prove the elements of common law fraud. We affirm.

The plaintiff was first treated in 1975 by defendant, a plastic surgeon, for a growth on his scalp. Defendant surgically removed the growth and sent it to a pathologist for tissue analysis, where the growth was diagnosed as an incompletely excised neurofibroma. Defendant then advised the plaintiff that his present treatment was complete, but that neurofibromas tend to recur, and that one could appear anywhere on his body, including the same place where the growth originally appeared.

Two years later, a dermatologist to whom plaintiff had gone for unrelated treatment, noticed that a new growth had appeared in the same spot. The dermatologist took a specimen for a biopsy which revealed a similar growth, and he recommended that plaintiff either return to defendant, or see another plastic surgeon. In 1979, a neurosurgeon, with the assistance of a plastic surgeon, removed the second growth. Neither the neurosurgeon nor the plastic surgeon testified on behalf of the plaintiff.

The plaintiff then brought this action alleging negligent removal of the first growth and misrepresentation as to whether or not it was completely excised. At trial, the plaintiff's attorney attempted to qualify the dermatologist to testify as to the standard of care for plastic surgeons in the Denver area. After hearing testimony revealing that he had never performed surgery on growths like the plaintiff's and that his knowledge of the standard of care for plastic surgeons was limited, the trial court found he was not qualified. No other experts were called to establish the standard.

The trial court dismissed both the negligence and misrepresentation claims at the end of plaintiff's case. From that dismissal, plaintiff appeals.

## I.

Plaintiff first contends that the trial court abused its discretion when it ruled that the dermatologist was not qualified to give his opinion as to the standard of care for plastic surgeons. We disagree.

We have previously held that, generally, practitioners of one school of medicine are not competent to testify as experts relative to standards of care required of practitioners of *another school*. *Caro v. Bumpus*, 30 Colo.App. 144, 491 P.2d 606 (1971) (doctor of medicine may not testify as an expert against doctor of osteopathy). However, neither *Caro* nor any other Colorado case to our knowledge addresses the question of whether a physician from one specialty may testify concerning the standard of care required of a physician with a different specialty; thus, we address that question for the first time here.

■ The plaintiff in a medical malpractice case must prove that the defendant specialist failed to meet the standard of care required of physicians in the same specialty practiced by the defendant. And, to qualify a witness as an expert on that standard of care, the party offering the witness must establish the witness' knowledge and familiarity with the standard of care and treatment commonly practiced by physicians engaged in the defendant's specialty. 3 C. Kramer, *Medical Malpractice* § 29.02[1] (1981) (first two volumes formerly published as Louisell & Williams, *Trial of Medical Malpractice Cases* (1977)).

■ A number of jurisdictions have held that the expert witness must have acquired, through experience or study, more than just a casual familiarity with the standards of care of the defendant's specialty. *Fitzmaurice v. Flynn*, 167 Conn. 609, 356 A.2d 887 (1975); *Gaston v. Hunter*, 121 Ariz. 33, 588 P.2d 326 (1978); *Ishler v. Miller*, 56 Ohio St.2d 447, 384 N.E.2d 296 (1978); *Radman v. Harold*, 279 Md. 167, 367 A.2d 472 (1977). We adopt the above test as the law of this state.

Here, the dermatologist testified that he had never performed surgery of the kind performed on the plaintiff, nor was there any evidence that he had witnessed its performance. He further testified he habitually refers such cases to plastic surgeons because the treatment of the condition in question is outside his area of expertise. His sole exposure to the work of plastic surgeons was through attending occasional lectures. Moreover, he admitted he had only limited knowledge of the standard of care for plastic surgeons.

■ In light of this testimony, the witness was not shown to have more than a casual familiarity with defendant's area of specialization. Hence, the trial court did not abuse its discretion in finding that he was not qualified to testify as to the standard of care for plastic surgeons. *See Baird v. Power Rental Equipment, Inc.,* 35 Colo.App. 299, 533 P.2d 941 (1975), *aff'd,* 191 Colo. 319, 552 P.2d 494 (1976).

■ Our ruling here should not be construed to mean that a general practitioner is *per se* precluded from testifying against a specialist on the issue of standard of care. If the witness possesses the requisite familiarity with the standard of care applicable to the specialist, then the testimony is admissible. *See Kramer, supra,* at § 29.02.

## II.

Because of the plaintiff's failure to provide a qualified expert on standard of care, the trial court dismissed the case at the close of plaintiff's evidence. At trial, plaintiff argued that there was no need for expert testimony because a layman could have made a judgment on the standard of care issue unaided by any expert testimony. The trial court found that, given the evidence before it, a layperson could not judge whether the incomplete excision was negligent. We agree with the trial court.

■ In a medical malpractice case, "[if] no standard is established by the testimony of physicians, there is no standard for the determination of the ultimate question of the physician's negligence." *Smith v. Cur-*

*ran,* 28 Colo.App. 358, 472 P.2d 769 (1970). However, plaintiff cites *Farrah v. Patton,* 99 Colo. 41, 59 P.2d 76 (1936) in which it is stated that an exception to this rule is proper when the " 'matter under investigation is so simple that the jurors are as well able as experts to pass upon the [negligence].' " Although we agree that there are fact situations which would be easily understood by a jury without the aid of expert testimony, such as *Farrah,* this case does not fall into that category. *See Mudd v. Dorr,* 40 Colo.App. 74, 574 P.2d 97 (1977).

In *Farrah,* an osteopath, in manipulating the patient's neck, gave it such a severe jerk that the patient's spinal cord was irreparably damaged, and paralysis resulted. The jury did not need a medical expert to tell it that a patient who enters a doctor's office with a stiff neck and as a result of the doctor's massage leaves paralyzed, was a victim of negligence.

■ Here, a conclusion of negligence was not as straightforward. The extent of an incision and the amount of tissue which need be removed in the excision of a tumor are matters within the knowledge of medical experts.

## III.

Plaintiff's final contention is that defendant's statement that the tumor was completely excised was a deception constituting fraud, and that this issue should have been sent to the jury. We disagree.

■ There is no need to present expert testimony to prove fraud in a medical malpractice context involving pre-operative negligent misrepresentations by a physician. *Bloskas v. Murray,* 646 P.2d 907 (Colo.1982) (decided after the trial of this case). *Bloskas* does not address the issue of whether there is a need to present expert testimony on post-operative misrepresentations, and we do not determine here that the rationale of *Bloskas* be extended to post-operative misrepresentations.

■ However, even if we assume *Bloskas* does apply to this case, the issue of fraud

was properly kept from the jury because of plaintiff's failure to establish one of its elements. A common element to all fraud actions is that there be reliance by plaintiff on the representation or the nondisclosure, and that such reliance must result in damage. *See Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937). Indeed, liability for fraud cannot be established without first establishing the existence of damages. *Greenleaf, Inc. v. Manco Chemical Co.,* 30 Colo.App. 367, 492 P.2d 889 (1971).

Plaintiff failed to establish any damages resulting from any reliance on defendant's statement that the tumor was completely excised. The plaintiff did not present evidence to establish that his delay in seeking treatment when a new tumor was discovered was due to any representations made by defendant. To the contrary, he testified to a number of other reasons for the delay—he was in his first year of college, the dermatologist expressed no urgency, his father needed leg surgery, and he was needed at home.

Moreover, defendant told plaintiff that tumors of the type removed from plaintiff tend to recur in the same spot or anywhere else on the body. Hence, plaintiff was put on notice that he should watch for regrowth. Any delay in seeking a second operation appeared to be due to personal reasons unrelated to any representations made by defendant.

One might contend that the second tumor and all the pain and expense associated with it are damages resulting from the alleged fraud. However, this would not be correct. There may have been damages resulting from the manner in which the surgery was performed *if* the incomplete excision caused the second tumor but, as we discussed above, no expert testimony was presented on this issue and the issue of negligence could not go to the jury. In a post-operative fraud case, one must establish damages resulting from the misrepresentation, not from the surgery, and plaintiff did not establish that he relied on the misrepresentation or that reliance resulted in damages.

 If there is no evidence that plaintiff relied on the misrepresentation and that such reliance resulted in any damages, the trial court should not submit the issue of fraud to the jury. *Greenleaf, supra.* Thus, since plaintiff failed to present evidence establishing reliance and resultant damages, the trial court properly dismissed the claim at the end of plaintiff's case.

Judgment affirmed.

COYTE and PIERCE, JJ., concur.