[No. 5914.]

## BONNET v. FOOTE.

1. **Surgeons — Malpractice** — A surgeon impliedly contracts with his patient that he possesses, in reasonable degree, the learning and skill ordinarily possessed by others of the profession, and that he will use reasonable and ordinary care and diligence in the exercise of his skill, and the application of his knowledge, to effect a cure, and that he will use his best judgment in deciding upon the nature of the injury and the proper treatment.—(285, 286)

A surgeon who negligently diagnoses and treats as a bruise what is, in fact, a fracture, is liable in damages to his patient. —(286)

2. **Evidence—Competency**—There being evidence from those who had observed an injured limb, shortly after the injury, tending to show that what defendant treated as a bruise was in fact a fracture of a bone, the testimony of a surgeon as to the result of an examination of the limb by him five years later, was competent, in corroboration of the other evidence.—(286, 287)

A photograph or sciagraph, taken long after the injury, was held competent.—(287)

3. —— **Damages** — Evidence that the injured limb was shorter than the other, though not prima facie evidence of negligence in the surgeon, was held competent on the question of damages.—(288)

*Error to Denver District Court*—Hon. SAMUEL L. CARPENTER, Judge.

Mr. GEO. W. TAYLOR, for plaintiff in error.

No appearance for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Defendant in error commenced suit against plaintiff in error to recover damages for the alleged malpractice of the latter. In her complaint, plaintiff alleged that while walking on Sixteenth street, in the city of Denver, she slipped and fell on the pavement and injured her right hip; that she employed the

defendant, a physician and surgeon, to treat the injury; that he examined her and announced that she had only sustained a severe bruise, which time and keeping quiet would heal; that he called and treated her twice a day for about two weeks, and thereafter once a day for about one month, and after this period, occasionally for about two months. She then alleges that the injury she received from her fall was a fracture of the neck of the right femur, with a displacement of the outer fragment, which eventually caused a shortening of the right limb from two to three inches. The negligence charged is, (1) neglect and inattention of defendant in his examination of the plaintiff; (2) failing to set the bones in proper position and to keep them in place; (3) failing to use proper appliances at the proper time. The trial on the issues made by the answer of the defendant to this complaint and the replication of plaintiff resulted in a verdict and judgment for plaintiff in the sum of fifteen hundred dollars. The defendant brings the case here for review on error.

The first question we shall consider is the sufficiency of the evidence to establish the negligence of the defendant as charged. The testimony is not voluminous, and so far as material to that question, is substantially as follows:

Plaintiff fell upon the sidewalk in the evening. She was at once removed to her room, and requested that the defendant be called. He arrived within a few minutes; found that she was suffering severe pain, and told her he was afraid she had suffered a fracture, and advised her that he would not make an examination until morning. The next morning he called, and examined her hip by feeling it with his hands, and concluded that the injury was a severe bruise and not a fracture. It further appears from the testimony that he continued to treat her for the

periods as alleged in her complaint, as for a bruise, and not a fracture; that he made frequent examinations of the injured limb, and measurements for the purpose of ascertaining whether or not it was shortening, but at no time regarded the injury as anything more than a severe bruise. Plaintiff was confined to her bed for about four weeks. At the end of that time she was able to sit up a short time each day, gradually increasing it. In a few weeks she was able to walk with crutches, and about four months after her injury was sufficiently recovered so that she was able to go to Santa Fe, where she remained for several months. She used crutches or a crutch and cane for about eighteen months after her injury. After that period she used a cane only. She suffered more or less pain for something like two years, at the end of which time it passed away, but occasionally would return. It appears from the testimony that the injured limb was shortened; that it is not as strong as before the injury, and that plaintiff cannot use it with the same degree of facility she could before it was injured.

A physician and surgeon called on behalf of the plaintiff testified that about five years after her injury he made an examination of her right limb, and found from such examination, aided by an X-ray photograph of her right hip, that she had sustained a fracture of the neck of the femur of the right limb. He also stated that in case of a fracture of the neck of the femur it is often difficult to ascertain whether there is a fracture or not. He further stated that a severe bruise in the vicinity of the neck of the femur would produce practically the same pain as a fracture. He also detailed the method usually adopted by surgeons for the purpose of ascertaining whether or not, when the hip is injured, a fracture exists. It appears from the testimony that the defendant did

not adopt this method, or do anything more in the way of examining the injured limb than already stated. During the course of his examination the witness was asked:

"Q. Doctor, if a patient with an injured hip lie on the back and her foot turns over to one side, what is the indication? A. Might be a fracture; might be a dislocation.

"Q. It would be one or the other? A. One or the other.

"Q. The indication would be that it was either a dislocation or fracture? A. Yes; that is, if there was inability to put it back again in place."

Plaintiff was recalled as a witness, and asked:

"Q. You may state to the jury what position your foot—the right foot—assumed after this injury, when you were lying there on your back? A. It laid over on the side.

"Q. Did Dr. Bonnet ever see it lying over on the side? A. Yes, sir. He said he did not like it, although he could not understand why it did that.

"Q. Did he straighten it? A. He straightened it up and it fell back again.

"Q. Did you have any control over it to keep it up from falling back? A. None whatever."

The defendant did not testify, and there was no testimony offered on his behalf controverting the facts and testimony as above narrated. From these facts and evidence, it is clear that the injury to plaintiff's hip was a fracture instead of a mere bruise, and the question to determine is whether or not it appears that defendant was guilty of negligence in diagnosing and treating her injury.

In the absence of a special contract, the law implies that a surgeon employed to treat an injury contracts with his patient, first, that he possesses that reasonable degree of learning and skill which is ordi-

narily possessed by others of the profession; second, that he will use reasonable and ordinary care and diligence in the exercise of his skill and the application of his knowledge to accomplish the purpose for which he is employed; and third, that he will use his best judgment in the application of his skill in deciding upon the nature of the injury and the best mode of treatment.—*Burnham v. Jackson,* 1 Col. App. 237; *Leighton v. Sargent,* 27 N. H. 460; *Winner v. Lathrope,* 67 Hun. 511; *Carpenter v. Blake,* 10 Hun. 358.

He is not responsible for want of success unless it results from a failure to exercise ordinary care or from want of ordinary skill.—*Burnham v. Jackson, supra; Leighton v. Sargent. supra; Williams v. Poppleton,* 3 Ore. 139.

And if he possesses ordinary skill and exercises ordinary care in applying it, he is not responsible for a mistake of judgment.—*Fisher v. Niccolls,* 2 Ill. App. 484; *Heath v. Glisan,* 3 Ore. 64; *Langford v. Jones,* 18 Ore. 307.

Applying these well-settled principles of law governing the liability of surgeons, it is at once apparent from the facts that the failure of the defendant to properly diagnose and treat the injury to plaintiff's hip was inexcusable. That the bone was fractured cannot be doubted. The evidence of such fracture was plain from the fact that plaintiff's foot lay over on one side, to which the attention of defendant was directed, so that one of two conclusions is inevitable: Either defendant did not possess that degree of learning and skill which the law requires of surgeons; or, if he did, he failed to exercise ordinary care in applying it.

It is urged that the court erred in admitting the evidence of the doctor above referred to, for the reason that his examination of the plaintiff was made

some five years after the injury, and that the condition of the injured limb at that time was not competent to prove that it was the result of the defendant's treatment, or failure to properly diagnose her injury. Unskillfulness cannot be established by proof of the result of treatment alone. Improper treatment must be shown by other evidence.—*Sims v. Parker*, 41 Ill. App. 284. This rule is satisfied in the case at bar. There was other testimony with respect to the condition of the limb shortly after the injury and during the period the defendant was treating it, which at least tended to prove that the bone had been fractured, and the evidence of the doctor to the effect that from his examination he found that it had been fractured was competent as tending to corroborate the testimony on the part of plaintiff that its condition immediately after the injury was such as would be caused by a fracture. In this connection we notice the claim that the court erred in admitting the photograph of the injured limb, the sciagraph as it is termed, for the reason that it was taken several years after the accident. That it was taken long after the injury would be proper to consider in determining the weight which should be given it; but that would not affect its competency.

It is next claimed that the court erred in admitting testimony of the shortness of the injured limb. A surgeon is only required to restore an injured limb to that degree of perfection which would result from the exercise of that degree of skill in treating the injury which is ordinarily possessed by members of the profession. As previously stated, a surgeon is not responsible for want of success unless it is the result of a failure to exercise ordinary care. Neither is he responsible for a mistake of judgment if he possesses ordinary skill and uses reasonable care in

exercising it. The fact that an injured limb is defective after the patient has recovered, is proper to consider in an action for malpractice, although it is not *prima facie* evidence of negligence of the surgeon treating it—*Piles v. Hughes,* 10 Iowa 579—or, as some authorities state in substance, the mere fact that an injured limb is imperfectly healed does not of itself establish that the surgeon treating it was guilty of negligence.—*Wood v. Parker,* 49 Mich. 295. However, neither of these rules of law, in the circumstances of this case, rendered the evidence under consideration incompetent. The claim of the plaintiff, and as the evidence establishes, was that the defendant did not treat her for a fractured bone, but for a severe bruise, and that he improperly diagnosed her injury. The bone was fractured. From the evidence it appears that defendant should have discovered this fact. So that the result which would follow his failure to properly diagnose and treat the injury was competent for the purpose of establishing the damages sustained.

It is also urged that the plaintiff was guilty of contributory negligence which should preclude a recovery. We fail to find that the record discloses any act on the part of the plaintiff which contributed to her injury, or retarded the healing of her injured limb.

Error is also assigned upon the refusal of the court to give instructions requested. Those requested were substantially embraced in the instructions given by the court. It is not error to refuse instructions embraced in those given.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.