Richard C. DAY and Loretta
Jean Day, Petitioners

v.

Bruce JOHNSON, M.D., Respondent.

No. 09SC879.

Supreme Court of Colorado,
En Banc.

May 31, 2011.

Law Office of Michael Goodman, PC, Michael Goodman, Englewood, Colorado, Attorneys for Petitioners.

Kennedy, Childs & Fogg, P.C., Barbara H. Glogiewicz, Christopher K. Miller, Denver, Colorado, Jaudon & Avery LLP, David H. Yun, Jared R. Ellis, Denver, Colorado, Attorneys for Respondent.

Cross & Bennett, LLC, Joseph F. Bennett, Colorado Springs, Colorado, Schoenwald & Thompson LLC, Julia T. Thompson, Denver, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Campbell, Latiolais & Ruebel, P.C., Jeffrey Clay Ruebel, Denver, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Davis Graham & Stubbs LLP, Andrew M. Low, Geoffrey C. Klingsporn, Denver, Colorado, Attorneys for Amicus Curiae HealthOne Clinic Services, Inc.

Hershey Skinner, LLC, Kari M. Hershey, Littleton, Colorado, Attorneys for Amicus Curiae Colorado Medical Society and Colorado Chapter of the American Congress of Obstetricians and Gynecologists.

Office of University Counsel, Patrick T. O'Rourke, Denver, Colorado, Attorneys for Amicus Curiae the Regents of the University of Colorado.

Justice RICE delivered the Opinion of the Court.

We granted certiorari in this medical malpractice case to review whether the "unsuccessful outcome/exercise of judgment" jury instruction patterned after Colorado Jury Instruction–Civil 15:4 (2009) is an accurate statement of the law in Colorado. The court of appeals held that the instruction accurate-

ly reflects Colorado medical malpractice law and, accordingly, that the trial court did not err in so instructing the jury. *Day v. Johnson*, 232 P.3d 175, 182 (Colo.App.2009). We affirm.

## I. Facts and Proceedings Below

Loretta Jean Day was diagnosed with hypothyroidism and a nodule on the left lobe of her thyroid gland. After treatment with medication and a series of ultrasounds, Ms. Day was referred to Dr. Bruce Johnson, a general surgeon, for evaluation and treatment. Dr. Johnson advised Ms. Day that she required surgery. During surgery, Dr. Johnson determined that both lobes of the thyroid required removal. After surgery, Ms. Day had internal bleeding which necessitated an emergency second surgery. The bleeding also caused edema in her trachea; as a result, Ms. Day was on a ventilator for a week. A few weeks later, Ms. Day's vocal cords stopped moving, preventing her from breathing and requiring an emergency tracheotomy. Ms. Day now suffers from a permanent speaking disability which she alleges was caused by the surgery.

The Days brought suit against Dr. Johnson for negligence and loss of consortium. Only the negligence claim is at issue here. In support of the negligence claim, Ms. Day alleged that Dr. Johnson incorrectly assessed her condition, recommended inappropriate treatment, used an improper surgical technique that damaged Ms. Day's nerves and larynx, and improperly removed the right lobe of her thyroid.

The trial court submitted the issue of Dr. Johnson's negligence to the jury. Included in the trial court's instructions to the jury was Instruction 27 submitted by Dr. Johnson stating in part that "[a]n exercise of judgment that results in an unsuccessful outcome does not, by itself, mean that a physician was negligent." The instruction given mirrored the language of pattern jury instruction CJI–Civ. 15:4. The trial court submitted this instruction over the Days' objection.

The jury found that Dr. Johnson was not negligent. The Days appealed and challenged, among other issues, the use of the jury instruction patterned after CJI–Civ. 15:4. The court of appeals affirmed the trial court holding that the instruction adequately and accurately states the applicable Colorado law.

The Days, along with amicus curiae Colorado Trial Lawyers Association, petitioned this Court for certiorari review. We granted certiorari on the issue of whether the court of appeals properly concluded that CJI–Civ. 15:4, the "unsuccessful outcome/exercise of judgment" instruction, correctly states the law and should be given in medical malpractice cases.

## II. Standard of Review

Trial courts have a duty to correctly instruct juries on all matters of law. *Krueger v. Ary*, 205 P.3d 1150, 1157 (Colo. 2009); *Jordan v. Bogner*, 844 P.2d 664, 667 (Colo.1993). We review de novo whether a particular jury instruction correctly states the law. *Fishman v. Kotts*, 179 P.3d 232, 235 (Colo.App.2007). In that review, we examine whether the instructions as a whole accurately informed the jury of the governing law. *Id.* As long as the instruction properly informs the jury of the law, a trial court has broad discretion to determine the form and style of jury instructions. *Krueger*, 205 P.3d at 1157. Therefore, we review a trial court's decision to give a particular jury instruction for an abuse of discretion. *Williams v. Chrysler Ins. Co.*, 928 P.2d 1375, 1377 (Colo. App.1996). A trial court's ruling on jury instructions is an abuse of discretion only when the ruling is manifestly arbitrary, unreasonable, or unfair. *Kinney v. People*, 187 P.3d 548, 558 (Colo.2008).

## III. Analysis

### A. The Issue on Appeal

First, we address which issues have been preserved for appeal. C.R.C.P. 51 requires parties to object to alleged errors in instructions before they are given to the jury and only the objected-upon grounds will be considered on appeal. *See also Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1195 (Colo. App.2009). Alleged errors not objected to are waived. *Id.* In addition, under the invited error doctrine, we will not review alleged

errors in jury instructions drafted and tendered by the now objecting party. *People v. Zapata*, 779 P.2d 1307, 1309 (Colo.1989).

We begin by examining the objection raised at trial to the jury instruction at issue. Both parties tendered instructions based on CJI–Civ. 15:4. Dr. Johnson tendered an instruction that included all of the language from CJI–Civ. 15:4:

A physician does not guarantee or promise a successful outcome by simply treating or agreeing to treat a patient.

An unsuccessful outcome does not, by itself, mean that a physician was negligent.

An exercise of judgment that results in an unsuccessful outcome does not, by itself, mean that a physician was negligent.

The Days tendered an instruction that mirrored the first two sentences of CJI–Civ. 15:4 and Dr. Johnson's tendered instruction, but omitted the last sentence:

A physician does not guarantee or promise a successful outcome by simply treating or agreeing to treat a patient.

An unsuccessful outcome does not, by itself, mean that a physician was negligent.

The Days' counsel objected to Dr. Johnson's tendered instruction, arguing that the pattern instruction misstated the law.[1] Over the objection, the trial court charged the jury with the full instruction including the last sentence which contained the exercise of judgment language.

On appeal, the Days argue that this Court should hold that CJI–Civ. 15:4's language: (1) conflicted with the standard of care by introducing subjectivity into an objective standard of care; (2) was duplicative; (3) commented on the evidence; (4) overemphasized the defense's theory of the case; and (5) was not supported by the evidence. In opposition, Dr. Johnson argues that the Days only objected to the last sentence of the instruction asserting that the exercise of

judgment language "provid[ed] the universal defense to everything." As such, Dr. Johnson contends that this Court need only review the last sentence of the instruction given and that this Court's review should be limited to whether the last sentence is an accurate statement of the law in Colorado.

We agree that our review is limited to whether the last sentence of CJI–Civ. 15:4 accurately states Colorado law. The Days tendered an instruction that was identical to Dr. Johnson's tendered instruction but for the third sentence which contained the exercise of judgment language. Also, no objection was made to the first two sentences of the jury instruction. Accordingly, we decline to address the portion of CJI–Civ. 15:4 that the Days tendered because they waived review by failing to object to those portions and because any potential error resulting from the jury's reliance on those portions is attributable to the Days' tendered jury instruction. The Days' only contemporaneous objection was that the exercise of judgment language contained in the third sentence misstated the law by conflicting with the objective standard of care. Therefore, the Days preserved for appeal the issue of whether the third sentence of CJI–Civ. 15:4 accurately states the law. We will not, however, consider whether the instruction was duplicative, commented on the evidence, overemphasized the defense's theory of the case, or was not supported by the evidence because those issues were not preserved for appeal.

## B. Medical Malpractice Law in Colorado

▉ To determine whether CJI–Civ. 15:4 is an accurate statement of the law, we begin by examining Colorado medical malpractice law. A medical malpractice action is a particular type of negligence action. *Greenberg v. Perkins*, 845 P.2d 530, 534 (Colo. 1993). Like other negligence actions, the plaintiff must show a legal duty of care on

1. Specifically, the Days' counsel argued that:

[The judgment] language is the universal defense to everything, that anything any doctor ever does because there is nothing ever done in the whole that is pattern, it assumes—the entire instruction essentially assumes the entire case. This is all just judgment. Because it's

all just judgment, you can't find possibly against Dr. Johnson.... [A]nd it is a pattern and an unfair instruction ... because the way that that instruction is worded and comes out assumes all medical malpractice into mere judgment and makes it unfair. I think it is an improper instruction.

the defendant's part, breach of that duty, injury to the plaintiff, and that the defendant's breach caused the plaintiff's injury. *Id.* at 533.

A physician's duty arises out of a contractual relationship when a physician undertakes to treat or otherwise provide medical care to another. *Id.* at 534. It has long been acknowledged in Colorado that, in the absence of a special contract, the law implies that a physician employed to treat a patient contracts with his patient that: (1) he possesses that reasonable degree of learning and skill which is ordinarily possessed by others of the profession; (2) he will use reasonable and ordinary care and diligence in the exercise of his skill and the application of his knowledge to accomplish the purpose for which he is employed; and (3) he will use his best judgment in the application of his skill in deciding upon the nature of the injury and the best mode of treatment. *Id.; Artist v. Butterweck,* 162 Colo. 365, 368, 426 P.2d 559, 560 (1967); *Klimkiewicz v. Karnick,* 150 Colo. 267, 274, 372 P.2d 736, 739 (1962); *Brown v. Hughes,* 94 Colo. 295, 304, 30 P.2d 259, 262 (1934); *Bonnet v. Foote,* 47 Colo. 282, 285–86, 107 P. 252, 254 (1910). Further, if a physician possesses ordinary skill and exercises ordinary care in applying it, he is not responsible for a mistake of judgment. *Bonnet,* 47 Colo. at 286, 107 P. at 254; *see also Foose v. Haymond,* 135 Colo. 275, 283, 310 P.2d 722, 727 (1957) (holding that "[t]o avail himself of the defense of a mistake of judgment, it must appear that the physician used reasonable care in exercising that judgment"); *Brown,* 94 Colo. at 304, 30 P.2d at 262; *McGraw v. Kerr,* 23 Colo.App. 163, 167–68, 128 P. 870, 873 (1912).

Even when possessing ordinary skill and exercising ordinary care in applying it, a physician does not guarantee a successful outcome. *Brown,* 94 Colo. at 304, 30 P.2d at 262; *Bonnet,* 47 Colo. at 286, 107 P. at 254 (a physician "is not responsible for want of success unless it results from a failure to exercise ordinary care or from want of ordinary

skill"). For example, in *Bonnet,* the Court determined that the fact that an injured leg was shorter after it healed was not prima facie evidence of negligence. 47 Colo. at 287–88, 107 P. at 255. Instead, the complaining party had to prove that the defect was a result of a failure to exercise ordinary care to establish negligence on the part of the doctor. *Id.* And in *Brown,* the Court required a showing that the alleged negligence of the defendant caused the injury. 94 Colo. at 305–06, 30 P.2d at 263. In so finding, the Court opined that "[a] lamentable result is not of itself evidence of negligence on the part of the defendants." *Id.,* 94 Colo. at 306, 30 P.2d at 263.

Our modern medical malpractice jurisprudence affirms the notion that a poor outcome does not, standing alone, constitute negligence. *See Melville v. Southward,* 791 P.2d 383, 390 (Colo.1990) ("The mere presence of an infection following surgery … does not establish a prima facie case of negligence."); *Smith v. Curran,* 28 Colo.App. 358, 362, 472 P.2d 769, 771 (1970) (proof of a bad or lamentable result is not of itself evidence of negligent treatment by a physician).

Thus, a medical malpractice claim requires more than proving a poor outcome; a breach of the applicable standard of care is required. To establish a breach of the duty of care in a medical malpractice action, the plaintiff must show that the defendant failed to conform to the standard of care ordinarily possessed and exercised by members of the same school of medicine practiced by the defendant. *Melville,* 791 P.2d at 387. That standard of care is measured by whether a reasonably careful physician of the same school of medicine as the defendant[2] would have acted in the same manner as did the defendant in treating and caring for the patient. *Greenberg,* 845 P.2d at 534; *Melville,* 791 P.2d at 387. Thus, the standard of care for medical malpractice is an objective one. *See Gorab v. Zook,* 943 P.2d 423, 428 n. 5 (Colo.1997); *Greenberg,* 845 P.2d at 534–35; *Melville,* 791 P.2d at 387.

---

**2.** The relevant community for comparison varies depending on whether the defendant claims to be a specialist or not. A nonspecialist will be held to the standards of physicians in the same or similar locality while a specialist will be held to the standards of physicians within their same specialty. *Jordan,* 844 P.2d at 666–67.

## C. CJI–Civ. 15:4

Having reviewed the applicable law in Colorado, we now turn to CJI–Civ. 15:4 to determine whether it accurately reflects the law. The portion of CJI–Civ. 15:4 at issue states that: "An exercise of judgment that results in an unsuccessful outcome does not, by itself, mean that a physician was negligent."

The Days urge us to abolish the exercise of judgment/unsuccessful outcome portion of CJI–Civ. 15:4. The Days contend that CJI–Civ. 15:4 misstates the law by failing to define "judgment" or "exercise of judgment." They further assert that the instruction injects a subjective analysis into an otherwise objective standard of care. Accordingly, the Days argue, the instruction is an "error in judgment" instruction akin to those rejected by other jurisdictions. Finally, the Days contend that the instruction misstates the law by stating that "judgment is not negligence" and by failing to define negligence or outline the standard of care. Our review of the language of the instruction and the cases in this state and elsewhere lead us to a different conclusion.

### 1. An Exercise of Judgment

First, the petitioners argue that the jury has no way to evaluate what constitutes "judgment." When, as here, "a term, word, or phrase in a jury instruction is one with which reasonable persons of common intelligence would be familiar, and its meaning is not so technical or mysterious as to create confusion in jurors' minds as to its meaning, an instruction defining it is not required." *People v. Thoro Prods. Co.*, 45 P.3d 737, 745 (Colo.App.2001) (citing *People v. Deadmond*, 683 P.2d 763 (Colo.1984); *People v. Leonard*, 872 P.2d 1325 (Colo.App. 1993)). The term "judgment" and the phrase

"exercise of judgment" are commonly used and understood by the general public and are not technical in nature. Moreover, in this case, each party presented an expert that discussed allegations involving the physician's judgment. Therefore, we are not persuaded by this argument.

Next, it is specifically the phrase "an exercise of judgment" that the Days find objectionable as reflected in counsel's objection and the fact that they did not object to the sentence preceding the "exercise of judgment" sentence. In the preceding sentence, the instruction provided that: "An unsuccessful outcome does not, by itself, mean that a physician was negligent." The "exercise of judgment" sentence mirrors the preceding sentence, but adds the layer of an exercise of judgment. The "exercise of judgment" phrase then distinguishes the situation in which no exercise of judgment is at issue— such as a claim for negligence in which the plaintiff asserts a slip of the knife—from the situation in which the exercise of judgment forms the basis for the negligence action— such as the case here in which the plaintiff asserts improper diagnosis and improper choice between alternative treatment options.

Indeed, at times a physician must choose among professionally acceptable alternative diagnoses or therapeutic alternatives and those choices may form the basis for a negligence claim. CJI–Civ. 15:4 is the only instance of the model instructions addressing the issue of alternative treatments or judgment in medical malpractice.[3] Not recognizing the role of judgment in making a diagnosis or choosing between treatment options would ignore an essential element of the practice of medicine. Still, the jury must determine under the applicable standard of care set forth in the jury instructions whether the physician's choice was objectively rea-

---

**3.** We note that, in addition to the instruction at issue, the trial court charged the jury with Instruction 28:

Where, under the usual practice of specialties of the defendant, different courses of treatment are available which might properly and reasonably be used, the physician must use his *best judgment* as to the choice of treatment.

A physician is not negligent because of a selection of a particular course of treatment, if

his selection is consistent with the skill and care which other physicians practicing in the specialty at the same time, would use in the same or similar circumstances. (emphasis added). The petitioner did not request nor did we grant review of this instruction. Therefore, we do not decide whether the giving of this instruction amounted to error. We note, however, that the instruction is not contained within the model Colorado Jury Instructions–Civil.

sonable. Thus, the "exercise of judgment" phrase merely refers to the fact that a physician was faced with a choice of options and had to exercise his medical judgment.[4]

### 2. "Error in Judgment" Instruction

The Days also assert that CJI–Civ. 15:4 subverts the objective standard of care by encouraging jurors to focus on the physician's subjective intent. Therefore, the Days argue, we should reject the instruction as an "error in judgment" instruction following the lead of other jurisdictions.

A distinction exists, however, between the "error in judgment" instructions rejected by other jurisdictions and the Colorado jury instruction before us. Other states have dubbed jury instructions "error in judgment" instructions when the instructions contain potentially subjective terms such as "good faith judgment," "honest mistake," "error in judgment," "bona fide error in judgment," and even "best judgment." *See e.g., Logan v. Greenwich Hosp. Ass'n*, 191 Conn. 282, 465 A.2d 294, 298–99 (1983) (holding that phrases such as bona fide error in judgment imply that only an error in judgment made in bad faith is actionable); *Hirahara v. Tanaka*, 87 Hawai'i 460, 959 P.2d 830, 834 (1998) (rejecting a jury instruction stating that "a physician is not necessarily liable for an 'error in judgment' "); *Peters v. Vander Kooi*, 494 N.W.2d 708, 712 (Iowa 1993) (rejecting the phrase "an honest error of judgment"); *Day v. Morrison*, 657 So.2d 808, 811–15 (Miss. 1995) (rejecting an instruction stating that "a competent physician is not liable per se for a mere error of judgment"); *Papke v. Harbert*, 738 N.W.2d 510, 526–27 (S.D.2007) (opining that an instruction that stated that a physician was not necessarily negligent because the physician erred in judgment should not be given in ordinary negligence cases, but acknowledging that the instruction may be appropriate if it omits the phrase mere error or mistake); *Chu v. Fairfax Emergency*

*Med. Assoc., Ltd.*, 223 Va. 383, 290 S.E.2d 820, 822 (1982) (rejecting an instruction stating that "the law requires only that the judgment be made in good faith" and expressing disapproval of the terms "honest mistake" and "bona fide error"); *Foster v. Klaumann*, 42 Kan.App.2d 634, 216 P.3d 671, 692 (2009) (rejecting a jury instruction stating that a surgeon must "use her best judgment" to select a course of treatment). These potentially subjective terms imply that a doctor must exercise bad faith to fail to meet the standard of care or that an exercise of good faith shields the physician from liability. *See Logan*, 465 A.2d at 298–99; *Wall v. Stout*, 310 N.C. 184, 311 S.E.2d 571, 577–78 (1984); *Chu*, 290 S.E.2d at 822. It is, however, these potentially subjective terms that pose the problem rather than the mere recognition that a physician exercises judgment.

We reject the argument that a jury instruction that recognizes the physician's *exercise* of judgment will necessarily mislead jurors to focus on a physician's subjective intentions rather than on whether the physician's conduct met the objective standard of care.[5] Unlike the instructions at issue in other jurisdictions, CJI–Civ. 15:4 does not immunize a physician from liability based on use of his *best* judgment or for *errors* in judgment. CJI–Civ. 15:4's language is neutral in that it refers only to an *exercise* of judgment. Therefore, we agree with the court of appeals that CJI–Civ. 15:4 is not an "error in judgment" instruction because it does not contain language mandating a finding of no liability if the physician's judgment was made in good faith.

### 3. The "By Itself" Limitation

The Days contend that CJI–Civ. 15:4 instructs a jury that "an exercise of judgment is not negligence." We disagree. CJI–Civ. 15:4 states that "[a]n exercise of judgment that results in an unsuccessful outcome does not, *by itself*, mean that a physi-

---

4. Though no such comment appears in CJI–Civ. 15:4, the "exercise of judgment" portion of the instruction should be given when, as here, the evidence suggests that the physician's exercise of judgment, such as a diagnosis or choosing a course of treatment, forms the basis of the negligence claim.

5. Because the jury instruction before us does not contain any of these subjective terms, we do not opine on the propriety of such instructions.

cian was negligent." (emphasis added). The phrase "by itself" establishes that more than "an exercise of judgment that results in an unsuccessful outcome" is required to prove a negligence claim. Thus, the instruction invokes a long standing tenet of tort and medical malpractice law—that the jury may not infer negligence from the fact of injury. *See Melville*, 791 P.2d at 390; *Brown*, 94 Colo. at 304, 30 P.2d at 262; *Bonnet*, 47 Colo. at 286–87, 107 P. at 254; *Smith*, 28 Colo.App. at 362, 472 P.2d at 771; *McGraw*, 23 Colo.App. at 168–69, 128 P. at 873.

### D. Elemental and Standard of Care Instructions

■■■ The Days also take issue with the fact that CJI–Civ. 15:4 does not instruct jurors on the elements of negligence or the applicable standard of care. CJI–Civ. 15:4 is not, however, meant to stand alone. Instead, the instruction must be read in conjunction with the other charged instructions. *See People v. Vanrees*, 125 P.3d 403, 410 (Colo. 2005); *People v. Phillips*, 91 P.3d 476, 483 (Colo.App.2004) ("It is unnecessary to give an instruction that is encompassed in other instructions given by the court."). CJI–Civ. 15:4, when given in conjunction with an elemental negligence instruction and a standard of care instruction[6] as recommended in the model instructions' Notes on Use, informs the jury that a physician may be held liable for an exercise of judgment, but only when his judgment deviates from the objective standard of care.

Here, the trial court instructed the jury on the elements of negligence with an instruction patterned after CJI–Civ. 9:1[7] and on the standard of care using an instruction patterned after CJI–Civ. 15:3.[8] In addition, Instruction 17 informed the jury that "[n]o single instruction state[d] all the applicable law," and that "[a]ll the instructions must be read and considered together." These instructions clearly inform the jury of the objective standard for negligence.

## IV. Conclusion

We hold that the portion of Colorado Jury Instruction–Civil 15:4 stating that "[a]n exercise of judgment that results in an unsuccessful outcome does not, by itself, mean that a physician was negligent" accurately states the law. The instruction does not impose a subjective standard of care on a physician whose exercise of judgment results in an unsuccessful outcome. Rather, it informs ju-

---

**6.** CJI–Civ. 15:4's Notes on Use 2 and 3 explain that this instruction accompanies the elemental instruction and may be given with the applicable standard of care instruction "when the evidence of malpractice includes an unsuccessful outcome." We understand the "may" as applying to whether to give 15:4 and not as making the elemental instruction or applicable standard of care instruction optional.

**7.** Instruction 25 stated in relevant part that:

For the plaintiff, Loretta Day, to recover from the defendant, Bruce Johnson, M.D., on her claim of professional negligence, you must find that all of the following have been proved by a preponderance of the evidence:
1. The plaintiff, Loretta Day, had injuries, damages, or losses;
2. That the defendant, Bruce Johnson, M.D., was negligent; and
3. That the defendant, Bruce Johnson, M.D.'s negligence was a cause of the plaintiff's injuries, damages, or losses.
If you find any one or more of these three statements has not been proved, then your verdict must be for the defendant.
On the other hand, if you find that all of these three statements have been proved, then your verdict must be for the plaintiff, Loretta Day, and you must also consider the defendant's affirmative defense of mitigation of damages. You must reduce the damages, if any, to the extent that you determine that the plaintiff, Loretta Day, failed to mitigate or minimize her damages.

**8.** Instruction 31 stated that:

A physician who holds himself out as a specialist in a particular field of medicine or who holds himself or herself out as having special skill and knowledge to perform a particular operation is negligent if that physician does an act, which reasonably careful physicians acting as such a specialist or possessing such special skill and knowledge would not do or fail to do an act which reasonably careful physicians acting as such specialists or possessing such special skill and knowledge would do.
To determine whether a physician's conduct was negligent, you must compare that conduct with what a physician having and using the knowledge and skill of physicians practicing or who hold themselves out as having the same special skill and knowledge at the same time would or would not have done under the same or similar circumstances.

ries that a bad outcome that results from the physician's exercise of judgment does not by itself constitute negligence. Instead, the jury must look to the elemental negligence instruction and the objective standard of care instruction to determine whether the defendant was negligent. Accordingly, we affirm the court of appeals.

Justice MÁRQUEZ does not participate.