22CA0474 Peo v Aguirre 07-25-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA0474 Jefferson County District Court No. 20CR4195 Honorable Diego G. Hunt, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Jeremy Paul Aguirre, Defendant-Appellant. JUDGMENT AFFIRMED Division III Opinion by JUDGE MOULTRIE Dunn and Yun, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 25, 2024 Philip J. Weiser, Attorney General, Alejandro Gonzales, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Jeremy Paul Aguirre, appeals the judgment of conviction entered on a jury verdict finding him guilty of driving under the influence with three or more prior alcohol-related driving convictions (felony DUI). We affirm. I. Background ¶ 2 In December 2020, Aguirre hit another car and fled the scene. Officer Eric Strasheim was dispatched to the accident area and located Aguirre in a vehicle matching the description of one of the vehicles involved in the accident at a stoplight’s left turn lane. Officer Strasheim pulled into the turn lane behind Aguirre and watched Aguirre begin to drive again and turn left after the light had already turned green twice. As Aguirre began to drive again, Officer Strasheim activated his emergency lights and sirens, but Aguirre did not stop. Another police officer, Sergeant Gregory Luby, arrived on scene, pulled his vehicle in front of Aguirre’s, and slowed until Aguirre was forced to come to a stop. ¶ 3 When Sergeant Luby approached Aguirre, Aguirre was slow to respond and had “bloodshot, watery eyes.” Sergeant Luby asked Aguirre whether he’d had anything to drink and Aguirre said, “[N]ot that much.” Aguirre used the car door for support and struggled to 
2 maintain his balance when Sergeant Luby asked him to exit his vehicle. After exiting the vehicle, Aguirre gave his driver’s license to Sergeant Luby and, during an inventory search of Aguirre’s car, another officer — Officer Elias Brown — observed an open can of beer in the center cupholder. ¶ 4 Officer Adrienne Blackwood arrested Aguirre for driving under the influence (DUI), explained Colorado’s express consent statute to him, and advised him that his license would be suspended if he refused to take a blood or breath test. Aguirre refused to take a blood or breath test, and Officer Blackwood completed an express consent affidavit noting Aguirre’s refusal. The affidavit included identifying information provided by and confirmed with Aguirre. ¶ 5 Because Aguirre had three prior convictions for drunk driving, the prosecution charged him with one count of felony DUI.
1 After a two-day trial, the jury convicted Aguirre. The district court sentenced Aguirre to two years of supervised probation. 1 The prosecution also charged Aguirre with one count each of the following: leaving the scene of an accident, careless driving, driving under restraint, compulsory insurance, and illegal possession or consumption of alcohol in motor vehicle. The prosecution dismissed these charges prior to trial. 
3 ¶ 6 Aguirre argues that (1) the evidence was insufficient to prove beyond a reasonable doubt that he had been convicted of three prior offenses as required by section 42-4-1301(1)(a), C.R.S. 2023, for felony DUI; (2) the district court erred by admitting evidence that he injured the driver of another vehicle and evidence that the location where officers forced him to stop his vehicle was dangerous; and (3) the district court erred by instructing the jury that it could consider his refusal to submit to a chemical test of his blood in determining his guilt or innocence. We address each contention below. II. Sufficiency of the Evidence for Conviction ¶ 7 Aguirre first argues that the prosecution presented insufficient evidence to sustain a conviction for felony DUI because the prosecution failed to provide specific corroborating identification evidence connecting him to the prior convictions. We disagree. A. Additional Background ¶ 8 At trial, the prosecution admitted certified copies of sentencing orders reflecting three convictions for someone with Aguirre’s exact name and date of birth: (1) a conviction in Adams County for driving while ability impaired (DWAI) resulting from a 2016 offense; 
4 (2) a conviction in Arapahoe County for DUI resulting from a 2005 offense; and (3) a conviction in Boulder County for DWAI resulting from a 2003 offense. ¶ 9 The prosecution also introduced Aguirre’s official Colorado Division of Motor Vehicles (DMV) driver history. That exhibit provided driver information for “Jeremy Paul Aguirre,” including a driver’s license number, birth date, sex, height, weight, eye color, hair color, and address. The driver history also referenced three convictions for offenses from the same counties and with the same offense dates as those listed in the court sentencing records. ¶ 10 Officer Blackwood testified that she reviewed the court sentencing and DMV records and confirmed that the offense dates matched. She also confirmed that the birth date listed on the DMV records and the court sentencing records matched the express consent affidavit she reviewed with Aguirre and had him sign. Officer Blackwood assisted Officer Brown with booking Aguirre at the police station after Aguirre was arrested, which included taking Aguirre’s fingerprints. Officer Brown testified that he conducted a criminal history background check that showed Aguirre had three existing convictions, two for DWAI and one for DUI. 
5 ¶ 11 Aguirre moved for a judgment of acquittal, arguing that the prosecution failed to prove beyond a reasonable doubt that he was the same person as the person with three prior convictions identified in the sentencing records and the DMV driver history. The district court denied Aguirre’s motion, finding that the admitted exhibits — which included the driver history, the express consent form, and the sentencing record — were competent evidence of the prior convictions. B. Standard of Review ¶ 12 “We review the record de novo to determine whether the evidence presented was sufficient in both quantity and quality to sustain a defendant’s conviction.” McCoy v. People, 2019 CO 44, ¶ 63. In doing so, we consider “whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.” Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010) (quoting People v. Bennett, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)). We don’t consider 
6 whether we might have reached a different conclusion than the jury. Thomas v. People, 2021 CO 84, ¶ 10. C. Applicable Law ¶ 13 Under section 42-4-1301(1)(a), a person who drives a motor vehicle under the influence of alcohol commits DUI. That section provides that DUI “is a class 4 felony if the violation occurred after three or more prior convictions, arising out of separate and distinct criminal episodes” for DUI or DWAI. § 42-4-1301(1)(a). As relevant here, a person is deemed to have a prior conviction for DUI if they’ve previously been convicted for DUI or DWAI under Colorado law. See § 42-4-1301(1)(j). A conviction “consists of the entry of a plea, a verdict or a finding of guilt, and the sentence imposed thereon.” People v. Harvey, 819 P.2d 1087, 1088 (Colo. App. 1991). ¶ 14 A third or subsequent offense under section 42-4-1301(1)(a) is an element of felony DUI that must be proved beyond a reasonable doubt. Linnebur v. People, 2020 CO 79M, ¶ 2, overruled on other grounds by People v. Crabtree, 2024 CO 40M. And to prove this element, the prosecution “must establish an essential link between the prior conviction and the defendant.” Gorostieta v. People, 2022 CO 41, ¶ 26. “[T]his requires the prosecution to present some 
7 documentary evidence combined with specific corroborating evidence of identification connecting the defendant to the prior felony conviction.” Id. D. Analysis ¶ 15 Relying on Gorostieta, Aguirre argues that the prosecution failed to present specific corroborating identification evidence connecting him to the prior convictions. ¶ 16 In Gorostieta, the Colorado Supreme Court considered the types of evidence that could be sufficient to link a defendant to a prior conviction and concluded that evidence such as a shared name and date of birth, offenses occurring in the same county, and matching physical descriptions constituted “corroborating evidence [that] might be helpful in establishing that the defendant committed the prior crime.” Id. at ¶ 27. The court further noted that “the mere fact that the defendants in the present and prior cases have the same name and date of birth, without more, will generally be insufficient.” Id. at ¶ 28. ¶ 17 We agree with Aguirre that evidence of his name and date of birth alone matching the prior convictions would have been 
8 insufficient. But the prosecution didn’t rely solely on Aguirre’s name and date of birth. See id. at ¶ 33. ¶ 18 Officer Blackwood testified she completed the express consent affidavit when Aguirre was arrested based on the information Aguirre provided about his driver’s license number, name, birth date, physical description, and mailing address. The prosecution then admitted the certified DMV records for “Jeremy Paul Aguirre,” which included the same driver’s license number, birth date, sex, height, weight, eye color, hair color, and address that Aguirre provided to Officer Blackwood for the express consent affidavit. Each page of the DMV records contained Aguirre’s driver’s license number on the top, which was identical to the driver’s license number on the express consent affidavit. See id. at ¶ 27 (noting that a driver’s license is a type of unique identifier that may be helpful in establishing that the defendant committed the prior crime). The DMV records were certified in accordance with section 42-2-121(2)(c)(II), C.R.S. 2023, and included an attestation from the DMV records custodian stating that “[a] search of our records has revealed that this is the only subject with this name and date of birth.” 
9 ¶ 19 The DMV records indicated that Jeremey Paul Aguirre had three prior convictions: (1) a 2016 DWAI in Adams County; (2) a 2005 DUI in Arapahoe County; and (3) a 2003 DWAI in Boulder County. ¶ 20 Aguirre concedes that the DMV history contains identifying information that matches the information in the express consent affidavit but argues that there is no indication of how the “convictions” section of the DMV history is linked to the rest of the document. But each page of the DMV history — including the section containing the convictions — contains Aguirre’s driver’s license number (identified as the DMV records account number) — which Officer Blackwood confirmed with Aguirre at the time of his arrest. And the certified sentencing orders — each of which reflects a conviction — have the same name, date of birth, and offense dates in corresponding counties as the convictions listed in the DMV history associated with Aguirre’s license number. ¶ 21 Additionally, in line with Gorostieta, the jury could have compared the physical description contained in these records to Aguirre, who was present in the courtroom. Indeed, Officer Blackwood identified Aguirre for the jury during trial. And the jury 
10 heard the testimony of Officers Blackwood and Brown linking Aguirre to the convictions identified in the records. Thus, when viewed as a whole, and giving the prosecution the benefit of every reasonable inference as we must, we conclude this evidence was sufficient for the jury to find beyond a reasonable doubt that Aguirre committed felony DUI. III. Admissibility of Evidence Under CRE 401 and CRE 403 ¶ 22 Aguirre next asserts that the district court violated CRE 401 and CRE 403 when it admitted evidence that the location where officers forced him to stop was dangerous and evidence that he injured the driver of another vehicle. We are not persuaded. A. Additional Background ¶ 23 Several officers testified for the prosecution. Sergeant Strasheim stated that “[b]eing in the left-hand through lane [where Aguirre was stopped] is dangerous” and because of a hill that limited a driver’s view, “[i]t was a dangerous place to be.” Sergeant Strasheim further testified that he served in a security role at the scene of the arrest due to the dangerous location and that he “would watch as traffic was cresting the hill, and make sure that there were no distraction[s] and [that] people weren’t distracted and 
11 going to run into the back of us.” Aguirre objected to this testimony under CRE 401 and CRE 403, but was overruled. ¶ 24 Sergeant Luby testified that he had safety concerns for the arrest location because the vehicle was “in the number one lane, on basically a highway, busy, it’s three lanes each direction with a center median.” Aguirre did not object to this testimony. ¶ 25 Officer Blackwood testified that she was dispatched in response to an injury crash. Aguirre objected to this testimony but was overruled. ¶ 26 Officer Brown testified that he was dispatched to the scene of the accident where the vehicle Aguirre hit had sustained damage. Over Aguirre’s objection to relevance and hearsay, Officer Brown identified the individual in the vehicle by name and stated that she “appeared to be upset and scared, consistent with someone who had just been involved in a traffic accident.” B. Preservation and Standard of Review ¶ 27 We review a district court’s evidentiary rulings for an abuse of discretion. Gonzales v. People, 2020 CO 71, ¶ 25. A court abuses its discretion when its decision is manifestly arbitrary, 
12 unreasonable, or unfair, or based on an erroneous understanding of the law. Yusem v. People, 210 P.3d 458, 463 (Colo. 2009). ¶ 28 As a preliminary matter, Aguirre and the People disagree as to whether Aguirre’s objection to Sergeant Luby’s testimony was preserved or whether Aguirre’s objection to the portion of Officer Brown’s testimony concerning the victim’s behavior after the accident was preserved. ¶ 29 If a claim was not preserved, we reverse only for plain error. Hagos v. People, 2012 CO 63, ¶ 14. We review preserved claims for nonconstitutional harmless error and reverse only if the error substantially influenced the verdict or affected the fairness of the trial proceedings. People v. Martinez, 2020 COA 141, ¶¶ 26-28. C. Applicable Law ¶ 30 “Relevant evidence” is evidence that tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. CRE 401. Relevant evidence is generally admissible. CRE 402. Relevant evidence may be excluded “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.” CRE 403. We 
13 afford evidence its maximum probative value and assume its minimum unfair prejudice. People v. Wakefield, 2018 COA 37, ¶ 72. D. Analysis ¶ 31 Assuming without deciding that Aguirre’s objections to each officers’ testimony were preserved, we conclude that any error in admitting the testimony was harmless because it didn’t substantially influence the verdict or affect the fairness of the trial. The statements from the officers were brief, and they provided factual context about the steps officers took during their investigation of the events leading to Aguirre’s arrest. And the court instructed the jury that any out-of-court statements regarding “law enforcements’ dispatch to the scene” could only be considered for their effect on the listener. See People v. Mersman, 148 P.3d 199, 203-04 (Colo. App. 2006) (identifying curative instructions as a remedy to alleged prejudice to a defendant). Thus, we conclude that the probative value of the statements outweighed any prejudice to Aguirre. ¶ 32 Furthermore, the evidence supporting Aguirre’s conviction was overwhelming. In addition to the evidence presented about the 
14 prior convictions, the jury heard ample evidence of the officers’ observations of Aguirre’s intoxication — including that he had bloodshot, watery eyes; he displayed a lack of coordination; he stated that he did “not [have] that much” to drink; and Officer Brown found a beer can in the center console of Aguirre’s car. See Campbell v. People, 2019 CO 66, ¶¶ 36-40. ¶ 33 We thus reject Aguirre’s assertion that the admission of the testimony regarding injuries to the other driver or the dangerousness of the location of the traffic stop substantially influenced the verdict or affected the fairness of the trial. IV. Jury Instruction Regarding Aguirre’s Refusal to Submit to a Chemical Test ¶ 34 Finally, Aguirre argues that the district court erred when it instructed the jury that it could consider his refusal to submit to a chemical test of his blood in determining his guilt or innocence. Specifically, Aguirre asserts the instruction improperly emphasized evidence of his refusal. We disagree. 
15 A. Additional Background ¶ 35 Based upon Aguirre’s refusal to submit to testing, the prosecution requested, and the district court gave, the following instruction: You are instructed that any person who drives any motor vehicle in the State of Colorado may be required to submit to a chemical test for the purpose of determining the alcoholic content of his or her blood. If a person refuses to submit to such chemical test, then the jury may consider such refusal along with all other competent evidence in determining the defendant’s guilt or innocence. ¶ 36 Aguirre objected to the instruction, arguing that it improperly emphasized an evidentiary fact. The district court overruled the objection, finding that the instruction “is an accurate statement of law” in conformity with section 42-4-1301(6)(a), “as opposed to an emphasis necessarily on particular evidence.” The court further noted that without such an instruction, “the jury would not know what the law provides” with respect to requiring a chemical test to determine a driver’s blood alcohol content and “that the refusal is otherwise admissible, despite the defendant’s right not to testify.” 
16 B. Standard of Review and Applicable Law ¶ 37 A district court has a duty to correctly instruct the jury on all matters of the law. Bedor v. Johnson, 2013 CO 4, ¶ 8. We review de novo whether the jury instructions correctly stated the law and adequately informed the jury of the governing law. Garcia v. People, 2022 CO 6, ¶ 16. “As long as the instruction properly informs the jury of the law, a trial court has broad discretion to determine the form and style of jury instructions.” McDonald v. People, 2021 CO 64, ¶ 54 (quoting Day v. Johnson, 255 P.3d 1064, 1067 (Colo. 2011)). “Therefore, we review a trial court’s decision to give a particular jury instruction for an abuse of discretion.” Id. (quoting Day, 255 P.3d at 1067). “A trial court’s ruling on jury instructions is an abuse of discretion only when the ruling is manifestly arbitrary, unreasonable, or unfair.” Id. (quoting Day, 255 P.3d at 1067). ¶ 38 Section 42-4-1301.1(1), C.R.S. 2023, provides that a driver operating a motor vehicle in Colorado consents to the provisions of the express consent statute. That statute provides that any person who drives in Colorado must “cooperate in the taking and completing of” testing to determine their blood or breath alcohol 
17 content if a law enforcement officer has probable cause to believe the person is driving while impaired. § 42-4-1301.1(2)(a)(I). ¶ 39 If a driver refuses a breath or blood test, evidence that the driver refused the test is admissible in a DUI trial. § 42-4-1301(6)(d); Mersman, 148 P.3d at 201 (“[I]t is proper to instruct a jury that it can consider a driver’s refusal to take a blood or breath test, along with other evidence, in determining his or her guilt of driving under the influence.”). It’s ultimately for the jury to determine “[t]he weight to be given the evidence of refusal.” Cox v. People, 735 P.2d 153, 159 (Colo. 1987). C. Analysis ¶ 40 Aguirre contends that the district court erred by providing the jury with an instruction that emphasized his refusal to submit to a chemical test of his blood. We discern no error. ¶ 41 First, we note that our supreme court has consistently held that there is no constitutional right to refuse such testing, and evidence of such refusal can be used as evidence of guilt. See, e.g., Fitzgerald v. People, 2017 CO 26, ¶ 21; Cox, 735 P.2d at159. Aguirre urges us to adopt out-of-state authority holding that such jury instructions are improper. Because we have clear precedent 
18 from our supreme court, we decline to do so. People v. Phillips, 2012 COA 176, ¶ 59. ¶ 42 Second, the district court provided an instruction identical to the instruction our supreme court approved in Cox. See 735 P.2d at 155. Additionally, the instruction closely tracked the language of section 42-4-1301(6)(d). People v. Garcia, 2021 COA 80, ¶ 10 (jury instructions “that accurately track the language of the applicable statute are generally sufficient”), aff’d, 2023 CO 30. Because the district court instructed the jury that it “may consider” evidence of his refusal “along with all other competent evidence,” and because the instruction informed the jury of the points of law related to refusal, we conclude that there was no error. V. Disposition ¶ 43 We affirm the judgment of conviction. JUDGE DUNN and JUDGE YUN concur.