23CA1308 Peo v Woodard 12-11-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 23CA1308
Chaffee County District Court No. 22CR78
Honorable Patrick W. Murphy, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cameron B. Woodard,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

_____

Philip J. Weiser, Attorney General, Lisa K. Michaels, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Cameron B. Woodard, was convicted of assaulting a corrections officer.  On appeal, he contends that the district court erred in instructing the jury on the definition of "deadly weapon" and by failing to note on the mittimus the amount of presentence confinement credit (PSCC) awarded at sentencing.  We affirm the judgment of conviction and remand the case for the court to correct the mittimus.

## I.     Background

¶ 2     The victim worked as a lieutenant in the correctional facility where Woodard was serving a prison sentence in connection with an unrelated case.  During her morning rounds on the day in question, the victim noticed that Woodard had placed a sheet over the bars to his cell, and she ordered him to remove it.  Later, the victim saw that Woodard had placed the sheet back up on his cell's bars.  When the victim attempted to remove the sheet, Woodard struck her with a plastic chair, pushed her against a wall, and punched her in the face.  Woodard punched the victim five or six more times while she was on the ground.  The victim sustained serious bodily injury from the attack.

¶ 3    The State charged Woodard with two counts of first degree assault, two counts of second degree assault, and six crime of violence counts.  Some of the substantive offenses and the crime of violence counts had as an element the use or threatened use of a deadly weapon.

¶ 4    During trial, the parties discussed how to instruct the jury on the definition of "deadly weapon," given that Woodard had used his fists to inflict serious bodily injury on the victim.  Over defense counsel's objection, the district court granted the prosecution's request to add language to the definitional instruction to inform the jury that body parts can be deadly weapons.  Consequently, the court instructed the jury as follows:

> "Deadly weapon" means a knife, bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury.  Any object can be a deadly weapon if it is used in a manner capable of producing death or serious bodily injury; body parts can be deadly weapons depending on the manner in which they are used.

¶ 5    Woodard's theory of defense was that although he had physically assaulted the victim, he did not form the specific intent

to cause serious bodily injury. The jury rejected that defense and convicted him as charged. The district court sentenced Woodard to an aggregate term of twenty-four years in prison and awarded him seventy days of PSCC.

## II. Deadly Weapon Jury Instruction

¶ 6 Woodard asserts that the district court erred by giving the deadly weapon instruction. He argues, primarily, that the added language concerning body parts as deadly weapons deviated from the statutory definition of "deadly weapon" and "violated the principle that jury instructions should not be pulled from judicial opinions." We perceive no error.

### A. Standard of Review and Legal Authority

¶ 7 A court has a duty to instruct the jury on all matters of law applicable to the case. *Roberts v. People*, 2017 CO 76, ¶ 18. In discharging this duty, "the trial court may instruct the jury concerning a principle of law that is related to an issue in controversy." *People v. Hayward*, 55 P.3d 803, 805 (Colo. App. 2002). We review de novo the question of whether a court accurately instructed the jury on the law. *Tibbels v. People*, 2022 CO 1, ¶ 22.

3

¶ 8    "As long as the instruction properly informs the jury of the law, a trial court has broad discretion to determine the form and style of jury instructions." *McDonald v. People*, 2021 CO 64, ¶ 54 (quoting *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011)).  Thus, we review a court's decision to give a particular instruction for an abuse of discretion.  *Id.*

¶ 9    Section 18-1-901(3)(e), C.R.S. 2025, provides that "'[d]eadly weapon' means . . . [a] firearm . . . knife, bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury." The corresponding model jury instruction uses the same language. COLJI-Crim. F:88 (2024).

¶ 10   In interpreting section 18-1-901(3)(e), the Colorado Supreme Court has consistently held that "fists may be deadly weapons if in the manner they are used or intended to be used they are capable of producing death or serious bodily injury." *People v. Ross*, 831 P.2d 1310, 1312-13 (Colo. 1992), *abrogated on other grounds by Montez v. People*, 2012 CO 6, ¶ 16; *see also Washington v. People*, 2024 CO 26, ¶ 28 (fists can be deadly weapons); *People v. Lee*, 2020

CO 81, ¶ 19 ("[H]ands may be deadly weapons if in the manner they are used, they are capable of producing death or serious bodily injury."); *People v. Saleh*, 45 P.3d 1272, 1276 (Colo. 2002) ("Objects which are not inherently deadly, such as feet and hands, can become deadly weapons when used to start an unbroken, foreseeable chain of events capable of producing serious bodily injury or death."). This legal principle is recognized in a comment to the deadly weapon model jury instruction. *See* COLJI-Crim. F:88 cmt. 3.

## B.     Analysis

¶ 11     The deadly weapon jury instruction at issue here contained two sentences: (1) the unobjected-to first sentence that provided the statutory definition of "deadly weapon"; and (2) the challenged second sentence setting forth the rule, derived from case law, that body parts can be deadly weapons.

¶ 12     We reject Woodard's assertion that the inclusion of the second sentence meant that the jury instruction impermissibly differed from the statutory definition of deadly weapon. *See People v. Weinreich*, 119 P.3d 1073, 1076 (Colo. 2005) ("A jury instruction should substantially track the language of the statute describing

the crime; a material deviation from the statute can result in reversible plain error, depending on the facts of the case.").  The first sentence tracked the statutory definition of "deadly weapon" and the language of the corresponding model jury instruction.  *See* § 18-1-901(3)(e)(II); COLJI-Crim. F:88.  The second sentence is akin to a supplemental instruction and explained, correctly, that body parts can fall within the statutory definition of a deadly weapon.  *See People v. Stellabotte*, 2016 COA 106, ¶ 31, *aff'd,* 2018 CO 66; *People v. Holwuttle,* 155 P.3d 447, 449 (Colo. App. 2006).

¶ 13     The fact that the second sentence derives from judicial opinions does not necessarily render the instruction erroneous.  While a district court's "use of an excerpt from an opinion in an instruction" is disfavored, *Evans v. People*, 706 P.2d 795, 800 (Colo. 1985), the practice does not inexorably result in error.  *See People v. Benton*, 829 P.2d 451, 453 (Colo. App. 1991) (explaining that, while the supreme court has cautioned against the use of language from opinions in instructions, there is no "prohibition against such practice").  The problem with using excerpts from opinions to formulate instructions is that the opinion language "may be a proper expression of the law as related to th[e] facts and issues" in

that particular case but may not be "sufficiently general, clear, or accurate to serve as a satisfactory or full instruction to the jury." *People v. Riley*, 708 P.2d 1359, 1366 (Colo. 1985) (quoting *Cohen v. People*, 103 P.2d 479, 480 (1940)). But here, the statement that body parts can constitute a deadly weapon is an accurate and generally applicable expression of the law. *See Stellabotte*, ¶ 31 ("Colorado's appellate courts have consistently upheld courts giving the jury supplemental instructions, even when unnecessary, if the instructions properly state the law."). And the supplemental instruction was appropriately tailored to the facts of the underlying case, which involved allegations that Woodard used his hands to assault the victim. *See Idrogo v. People*, 818 P.2d 752, 754 (Colo. 1991) ("[A]lthough an instruction couched in terms of the language of the statute is proper, a trial court must tailor instructions to the particular circumstances of a given case when the instructions, taken as a whole, do not adequately apprise the jury of the [applicable] law . . . ." (citation omitted)).

¶ 14    Finally, we are not persuaded by Woodard's argument (raised for the first time on appeal) that the instruction improperly emphasized certain evidence — that his body parts could be deadly

weapons. According to Woodard, because the instruction already explained that *any* "weapon, device, instrument, material, or substance" can constitute a deadly weapon if capable of producing death or serious bodily injury, the additional language about body parts as deadly weapons improperly suggested that Woodard intended to inflict serious bodily injury on the victim. But under that theory, the instruction would improperly emphasize evidence in any case involving a firearm, knife, or bludgeon, which are also mentioned separately in the statutory definition of a deadly weapon. In any event, we reject the notion that by clarifying that body parts can constitute deadly weapons, the instruction "made it seem more likely" that Woodard had the requisite mens rea for certain of the charged offenses. It was undisputed that Woodard used his hands to repeatedly punch the victim, causing serious bodily injury. Whether he specifically intended to cause such serious injuries was a separate issue, unaffected by the definition of deadly weapon.

¶ 15 As the district court noted, body parts do not intuitively satisfy the definition of deadly weapon, which refers to a weapon, device, instrument, material, or substance. For the reasons explained above, we conclude that the court did not abuse its discretion by

giving the supplemental instruction to ensure that the jury was not confused as to whether body parts could be deadly weapons.

III. Presentence Confinement Credit

¶ 16 Woodard contends, the People concede, and we agree that a remand is required for correction of the mittimus. The mittimus should be amended to reflect the seventy days of PSCC that were awarded at the sentencing hearing. *See People v. Tennyson*, 2023 COA 2, ¶ 37 (a court's oral pronouncement of sentence takes precedence over the mittimus), *aff'd*, 2025 CO 31; Crim. P. 36; *People v. Baker*, 2019 CO 97M, ¶ 21.

IV. Disposition

¶ 17 The judgment of conviction is affirmed. The case is remanded for the court to amend the mittimus.

JUDGE JOHNSON and JUDGE SCHOCK concur.